Ronald Dean COWARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–98–00409–CR.

Court of Appeals of Texas, San Antonio.

April 21, 1999.

H. Todd McCray, San Antonio, for Appellant.

Susan D. Reed, Criminal District Attorney, San Antonio, for Appellee.

Before TOM RICKHOFF, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### NATURE OF THE CASE

Ronald Dean Coward was convicted by jury of driving while intoxicated and sentenced to five years' imprisonment. Coward appeals his conviction challenging the admission of breath test results from an Intoxilyzer because the State did not prove the reliability and validity of the underlying scientific theory to support its modification of the Intoxilyzer.

### FACTS

Coward drove through a police flare line constructed during investigation of an unrelated automobile accident, then ignored a police officer directing traffic, proceeded past another police officer who stopped him to tell him to turn around, and was finally apprehended by several police officers at the scene of the accident who blocked the road with their bodies and drew their weapons. Coward was arrested at the scene, but was not given a field sobriety test. Coward was later transported to the DWI room in the magistrate court.

Officer Richard Long testified that he administered a horizontal gaze nystagmus test and a vertical gaze nystagmus test on Coward shortly after he arrived in the DWI room and, both tests indicated that Coward was intoxicated. Officer Long then administered a breath test using an Intoxilyzer 5000 instrument (Intoxilyzer). The breath test recorded results of .208 and, three minutes later, .205, both of which indicated that Coward was intoxicated. Officer Long testified that he administered a simulated test prior to administering Coward's test to ensure the Intoxilyzer's accuracy.

Prior to trial, the trial court held a hearing on Coward's motion to suppress the evidence of his Intoxilyzer test results on the basis that admission of the evi-

dence violated TEX.R. EVID. 702. Coward contended that the Intoxilyzer had been modified from its original manufactured condition, compromising its validity and accuracy. Specifically, Coward contended that the scientific method and technique used to modify the Intoxilyzer was not reliable and relevant. At the suppression hearing, the State presented testimony from Dr. Allen McDougall, breath test technical supervisor of Bexar County. Dr. McDougall testified that (1) he received the particular Intoxilyzer in mid 1995 from the Texas Department of Public Safety (DPS); (2) the Intoxilyzer was certified by the Scientific Director of the DPS; and, (3) he installed the Intoxilyzer in the magistrate's court. McDougall testified that he inspected the Intoxilyzer to ensure its accuracy and calibration at least once every 45 days. McDougall testified that he inspected the Intoxilyzer 11 days prior to the date of Coward's test and 13 days following Coward's test. McDougall testified he performed a reference test during each inspection to ensure the Intoxilyzer's accuracy. Both inspections revealed the Intoxilyzer was operating properly.

McDougall testified further that the Intoxilyzer was modified from its original factory condition by order of the Scientific Director of the DPS to prevent possible tampering of test results during its operation. McDougall testified that the Intoxilyzer was originally designed to be operated in two ways. First, the operator could preserve breath samples by attaching a glass tube to the back of the machine. After the testing mechanism performed its function, the breath sample proceeded through an internal exhaust tube attached to a brass coupling in the back of the machine and then into the attached glass tube, which stored the sample. The machine could also perform its testing function without preserving the breath samples, by simple removal of the glass tube from the brass coupling. McDougall testified that when the glass tube is removed, the operator could tamper with the Intoxilyzer to produce higher test results by blocking the opening to prevent the dissipation of the breath sample in the outside air, producing a buildup of breath sample in the testing mechanism. To prevent such tampering, the Scientific Director of the DPS ordered the brass coupling and attached exhaust tubes to be permanently detached from all Intoxilyzers used in Texas. By disconnecting the exhaust tube mechanism and brass coupling, breath samples are dissipated inside the cabinet of the Intoxilyzer after they are evaluated by the testing mechanism.

The State proved that on the day Coward was tested, (1) the Intoxilyzer was functioning properly; (2) the Intoxilyzer was periodically tested by one who understands its scientific theory; and (3) the test results were interpreted by a qualified person.

### DISCUSSION

In his first point of error, Coward argues that the trial court erred by admitting the Intoxilyzer test results because the State failed to prove that the underlying scientific theory used to modify the Intoxilyzer was relevant and reliable. In his second through fourth points of error, Coward contends the State failed to prove that the scientific theory used to support modification of the Intoxilyzer was valid and that the technique in applying the theory was valid and properly applied. Coward's arguments presume that the State needed to prove that a relevant and reliable scientific theory supported its modification of the Intoxilyzer in order to admit the test results as evidence. Coward apparently misconstrues the proof required to admit evidence of a scientific theory. In so doing, Coward misplaces the evidentiary foundation required to support the admission of scientific-theory evidence as the predicate necessary to support modification of the Intoxilyzer in order to admit its results into evidence.

Generally, to admit scientific theory evidence to support conviction, the

State must introduce expert testimony that the scientific theory is "sufficiently reliable and relevant to help the jury in reaching accurate results." TEX.R. EVID. 702; *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992). To be considered reliable, any evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question. *Kelly*, 824 S.W.2d at 573. However, when admitting evidence of Intoxilyzer test results to support conviction of this offense, the State need not prove that the Intoxilyzer test is a scientifically reliable test. *Shannon v. State*, 800 S.W.2d 896, 901 (Tex.App.—San Antonio 1990, pet. ref'd). The Legislature has rendered the Intoxilyzer test admissible by statute, without any predicate showing as to reliability. TEX. TRANS. CODE ANN. § 724.064 (Vernon 1999)(formerly Tex.Rev.Stat. Ann. art. 6701*l*–5, § 3(a)); *Shannon*, 800 S.W.2d at 901–02. The predicate now required for admission of Intoxilyzer test results to prove intoxication is to show: (1) periodic supervision over the Intoxilyzer and operation by one who understands the underlying scientific theory of the Intoxilyzer; and (2) proof of the Intoxilyzer test result by one qualified to translate and interpret such result, so as to eliminate hearsay. *Id.* at 901

To the extent Coward argues that the State failed to prove the validity of the underlying scientific theory to support admission of the Intoxilyzer test results or the validity of the technique applying the theory, his arguments fail under *Shannon.* The State is no longer required to satisfy such criteria. *Id.* at 901–02. The legislature, by mandating the Intoxilyzer test results to be statutorily admissible, has determined the underlying scientific theory and the technique in applying the theory to be valid, reliable. *Id.*

■ To the extent Coward argues that the test results were inadmissible because the State failed to prove the reliability and relevancy of the scientific method used to *modify* the Intoxilyzer, his arguments fail. The State need not establish an underlying scientific theory to support *modification* of the Intoxilyzer in order to admit evidence of the test results. The State need only support admission by proving the Intoxilyzer was periodically inspected, was operated properly, and the test result was interpreted by one qualified to do so. *See id.* at 901. The State established this evidentiary predicate. Any challenge to the admission of the evidence on the basis that the Intoxilyzer was modified goes to the validity of the test results themselves, and to the accuracy of the Intoxilyzer test results following modification.

■ To the extent Coward contends that the State's modification of the Intoxilyzer dispels its validity and accuracy, his arguments fail. The State dispelled this challenge by proving the Intoxilyzer passed simulated tests after its modification. The State proved that the Intoxilyzer was periodically monitored to ensure its accuracy, the Intoxilyzer was inspected prior to Coward's test and proven to be operating properly, and a simulated reference test of the Intoxilyzer administered immediately prior to Coward's test ensured its accuracy. This proof reveals that any modification to the Intoxilyzer did not compromise its accuracy and validity, and the modification does not prevent admission of the Intoxilyzer's test results.

Coward's first through fourth points of error are overruled. The trial court's judgment is affirmed.