No. 04-00-00152-CR



Stephen Vincent DAVIS,


Appellant



v.



The STATE of Texas,


Appellee



From the County Court at Law No. 6, Bexar County, Texas


Trial Court No. 666133


Honorable M'liss Christian, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Alma L. López, Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: October 10, 2001


AFFIRMED

 Stephen V. Davis appeals his conviction of driving while intoxicated in seven issues.
Specifically, he claims that (1) the trial court erred in admitting retrograde extrapolation testimony
and breath test results because they fail to meet the requirements of Daubert v. Merrell Dow Pharm.
Inc., 509 U.S. 579 (1993) and Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992); (2) the trial
court erred in admitting other types of evidence; (3) he was denied effective assistance of counsel;
(4) the evidence is factually insufficient to support his conviction; and (5) the appellate record is
incomplete. We affirm the trial court's judgment.

Factual and Procedural Background Stephen V. Davis was charged with the offense of driving while intoxicated. The facts giving
rise to Davis's arrest and eventual conviction are disputed.

 Roland Schuber, a deputy with the Bexar County Sheriff's Office, testified that on June 11,
1997, he and his partner, Officer Leo Gomez, were traveling north on Highway 281. The officers
were assigned to the vice unit and were dressed in plain clothes and driving an unmarked car. Officer
Schuber saw Davis enter the highway and then weave across three lanes. Schuber had to swerve and
rapidly brake to avoid colliding with Davis. Davis then sped away.

 The officers pulled Davis over for failure to maintain a single lane. According to Schuber,
Davis moved his car onto the roadside, but left the driver's side wheels of his car in the roadway.
When Davis got out of the car, he used the side of the car to support himself and swayed as he
walked to the back of the car. Schuber testified Davis had a strong smell of intoxicants on his breath
and, therefore, he asked Davis to submit to standardized field sobriety tests, including the horizontal
gaze nystagmus (HGN) test. Schuber testified that he is trained and certified to administer the tests.
Schuber explained that as he attempted to administer the tests, Davis refused to follow his
instructions and would not keep his head still. According to Schuber, Davis was "noncompliant."
He, therefore, discontinued the tests. 

 Schuber placed Davis under arrest and took him to the police station to administer a breath
test. Davis agreed to submit to the breath test. Schuber saw Davis take the test and saw the results.
Davis failed. Officer Schuber concluded that Davis had lost the normal use of his mental and
physical faculties through the use of alcohol. 

 Officer Gomez also testified for the State. He explained that Davis failed to use a signal when
he entered the highway and could not maintain a single lane. He also saw Davis use the car to
support himself and noticed Davis's breath smelled like alcohol.

 Michael Saunier, of the Bexar County Sheriff's Office/Department-DWI Traffic
Enforcement Unit testified for the State. Saunier is certified to administer breath tests and
standardized field sobriety tests. Saunier administered the breath test and received a valid result.

 George Allen McDougall, Jr. was the State's last witness. McDougall explained the
underlying scientific theory behind administering breath tests and testified that the technique is valid
and was properly applied in this case. According to McDougall, the machine was operating correctly
and the values obtained were accurate.

 Davis gave two breath samples. The first measured .138, the second, .144. McDougall then
extrapolated the samples and determined that Davis had lost the normal use of his mental and
physical faculties for driving and that his blood alcohol concentration level was above the legal limit. 

 Davis testified on his own behalf. He explained that earlier in the day he had been rafting at
the river with a friend. His friend had abandoned him on the banks of the river. He had to walk
approximately six hours in hot temperatures before he was able to catch up with his friend. He had
eaten nothing during the day, and, although he drank one beer while he was rafting, he drank
nothing during his walk. On his way home, he stopped at a saloon and had one beer and two-thirds
of another. 

 According to Davis, after he left the saloon and was headed home, a car roared up behind
him. Officers Schuber and Gomez were in the car. Davis testified that he did not leave his wheels
in the roadway when he pulled over and that he had to use the car to support himself because he was
exhausted and had aggravated a previous hip injury that day. He explained to the officers that he was
too tired to do the field sobriety tests. Davis explained that the reason he did not keep his head still
while Officer Schuber administered the HGN test was because there was oncoming traffic shining
lights in his face. After Davis was arrested, he voluntarily submitted to a breath test. He testified that
he had to blow several times because they were unable to obtain a reading. According to Davis, after
his second attempt, he burped. The officer was able to obtain a reading on the third and fourth
attempts. 

 Deputy Saunier testified as a rebuttal witness that Davis did not burp during the breath tests.
Saunier explained that he was in Davis' continuous presence and would have noticed if he had
burped.

 The jury found Davis guilty, and the trial court assessed punishment as probation and a fine.
Davis appeals.

Admissibility of Evidence

 In his first two issues, Davis complains the trial court erred in admitting retrograde
extrapolation testimony and his breath test results. Specifically, he claims they are inadmissible
under Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993) and Kelly v. State, 824 S.W.2d 568
(Tex. Crim. App. 1992).


I. Standard of Review: 

 This court reviews the admission of scientific evidence for an abuse of discretion. Kelly, 824
S.W.2d at 574. That is, if the trial court's ruling was within a zone of reasonable disagreement, then
an appeals court will not disturb it. Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990); Avila v. State, 18 S.W.3d 736, 738 (Tex. App.-San Antonio 2000, no pet.).

II. Discussion:

 To be admissible, expert testimony must be both sufficiently reliable and relevant to aid the
jury in reaching accurate results. Daubert, 509 U.S. at 592; Jackson v. State, 17 S.W.3d 664, 670
(Tex. Crim. App. 2000); Hartman v. State, 946 S.W.2d 60, 62 (Tex. Crim. App. 1997). The
proponent of the evidence carries the burden of demonstrating by clear and convincing evidence that
the evidence is reliable. Tex. R. Evid. 702; Jackson, 17 S.W.3d at 670; Kelly, 824 S.W.2d at 573.
The proponent of the evidence meets its burden by showing (1) the validity of the underlying
scientific theory; (2) the validity of the technique applying the theory; and (3) proper application of
the technique on the occasion in question. Jackson, 17 S.W.3d at 670; Kelly, 824 S.W.2d at 573;
Coward v. State, 993 S.W.2d 307, 310 (Tex. App.-San Antonio 1999, no pet.); see Daubert, 509
U.S. at 592-93 (stating that the methodology must be properly applied to the facts for scientific
evidence to be admissible). 

 A. Test Results

 When offering evidence of intoxilizer results to support a conviction, the State need not
prove that the intoxilizer test is a scientifically reliable test. Coward, 993 S.W.2d at 310 (stating that
the first two prongs need not be met). The Legislature, by enacting Texas Transportation Code §
724.064, rendered the test admissible without any predicate showing as to reliability. (1) Tex. Trans.
Code Ann. § 724.064 (Vernon 1999); Stevenson v. State, 895 S.W.2d 694, 696 (Tex. Crim. App.
1995); Coward, 993 S.W.2d at 310. Instead, the State must simply show "(1) periodic supervision
over the intoxilizer and operation by one who understands the underlying scientific theory of the
intoxilizer; and (2) proof of the intoxilizer test result by one qualified to translate and interpret such
result...." Coward, 993 S.W.2d at 310.

 The State established this evidentiary predicate. Officer Saunier testified that he was a
certified intoxilizer operator on the night of Davis' arrest and has operated the intoxilizer many
times. Saunier stated he completed the fifteen minute observation period and explained how he
administered the test to Davis and obtained a valid test result. Therefore, to the extent Davis
complains the test results were inadmissible, we overrule his issue.

 B. Retrograde Extrapolation

 Davis also challenges the admissibility of McDougall's extrapolation testimony. Davis does
so on two grounds: (1) that McDougall lacked the necessary information to reach a reliable
conclusion about Davis' level of intoxication at the time he was driving; and (2) that retrograde
extrapolation is reliable only when a series of breath tests are administered. As the State points out,
however, Davis has waived the second component of his complaint. When the State offered
McDougall's retrograde extrapolation testimony, Davis's counsel objected under Rules of Evidence
702 and 705(b), stating "until the predicate can be laid for the scientific evidence that, in fact, there
is a theory or scientific extrapolation that is reliable and can be applied correctly on this occasion,"
the testimony is inadmissible. After McDougall explained the technique used to apply the
extrapolation theory, Davis's counsel reasserted his objection. He also objected on the ground that
there are too many variables involved to be able to properly lay the predicate necessary for expert
testimony. However, he made no objection regarding the necessity of a series of breath tests to the
reliability of the results. Therefore, this court need only address Davis's first complaint-that
McDougall lacked the necessary information to reliably conclude Davis was drunk at the time he was
driving.

 The Court of Criminal Appeals recently set forth the analysis to be used in determining
whether retrograde extrapolation testimony is reliable in Mata v. State, 46 S.W.3d 902 (Tex. Crim.
App. 2001). Of paramount concern is the expert's ability to clearly and consistently apply the science
and explain it with clarity to the court. Id. at 916. The expert must also demonstrate an understanding
of the difficulties and risks associated with retrograde extrapolation. Id. In evaluating the reliability
of extrapolation testimony, we must also consider

 (a) the length of time between the offense and the test(s)
administered; (b) the number of tests given and the length of time
between each test; and (c) whether, and if so, to what extent, any
individual characteristics of the defendant were known to the expert
in providing his extrapolation. These characteristics and behaviors
might include, but are not limited to, the person's weight and gender,
the person's typical drinking pattern and tolerance for alcohol, how
much the person had to drink on the day or night in question, what the
person drank, the duration of the drinking spree, the time of the last
drink, and how much and what the person had to eat either before,
during, or after the drinking.


Id. 

 There were two tests of Davis's blood alcohol content that were conducted approximately
and hour and a half after Davis was stopped by police. McDougall, however, did not know any of
Davis's personal characteristics-he did not know if Davis had eaten anything that night, and if so,
how much; he was unaware of how much Davis had to drink and of what he had been drinking or
when Davis took his last drink that evening; and he did not know the length of Davis's drinking
spree or even his weight. Mata, 46 S.W.3d at 917. 

 The factors here weigh against a finding of reliability. Id. Accordingly, we hold the State
failed to prove by clear and convincing evidence that McDougall's retrograde extrapolation was
reliable.

 Any error in admitting McDougall's testimony was harmless. Error of this nature is not
reversible unless it affects the substantial rights of the appellant. Tex. R. App. P. 44.2(b). The State,
here, alleged both the ".10" and the "impairment" theories of intoxication and the jury was charged
in the disjunctive. Proof that Davis's blood alcohol content was .10 or over or that he was impaired
is sufficient to uphold his conviction. See Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App.
1999) (holding proof that victim was stabbed or struck was sufficient). 

 Officer Schuber testified that he saw Davis enter the highway and weave across three lanes.
Once Davis was out of his car, Schuber observed him sway as he walked, so much so, that he used
his car to support himself. Schuber further noted that Davis had a strong smell of intoxicants on his
breath.

 Because the jury was charged under both definitions of intoxication, and given the arresting
officer's testimony as to Davis's apparent intoxication at the time he was stopped, we find Davis has
not shown he was harmed by the admission of McDougall's testimony. Hartman v. State, 2 S.W.3d
490, 494 (Tex. App.-San Antonio 1999, pet. denied).


Trial Court Errors

 In his third issue, Davis complains of several alleged trial court errors. Specifically, he asserts
(1) that extrapolation testimony invades the province of the jury; (2) the trial court erred when it
prohibited defense counsel from rehabilitating him regarding an alleged license suspension; (3) the
trial court erred in admitting blood alcohol concentration testimony; and (4) the trial court erred in
admitting HGN test results.

I. Extrapolation Testimony Invades Province of Jury:

 Davis complains that retrograde extrapolation testimony, generally, "is inadmissible as it
would constitutes an invasion of the jury's province." First, we note Davis failed to preserve this
complaint for appellate review. No objection on this ground was raised at trial. Second, any error in
admitting extrapolation testimony is harmless in light of the arresting officer's testimony. Hartman,
2 S.W.3d at 494.

II. Driver's License Suspension:

 Davis also asserts that the trial court "erred when it prohibited defense counsel from
rehabilitating Appellant regarding whether his driver's license had been suspended." Although
Davis's defense counsel objected and cross-examined Deputy Schuber, he never made a bill of
exceptions or an offer of proof showing his intent to establish that Davis's license had not been
suspended. Error may not be predicated upon a ruling which excludes evidence unless the substance
of the evidence was made known to the court by offer of proof or was apparent from the context
within which questions were asked. Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). An
offer of proof may be in question-and-answer form, or it may be in the form of a concise statement
by counsel. Id.; Love v. State, 861 S.W.2d 899, 901 (Tex. Crim. App.1993). 

 Here, Davis did not make an adequate offer of proof, nor did counsel make a concise
statement that would allow the trial court to determine whether the evidence he intended to offer was
relevant. Therefore, Davis has waived his complaint.

III. Blood Alcohol Concentration Testimony:

 Davis, in another sub-issue, claims the trial court erred when it allowed Officer Schuber to
testify about Davis's blood alcohol concentration level. Specifically, he claims that the proper
predicate was not laid to allow Schuber to testify as to Davis's blood alcohol concentration level.
Davis, however, has waived his complaint. 

 Although Davis objected the first time Schuber testified regarding his blood alcohol
concentration level, Davis did not object to the following exchange that took place between the
prosecutor and Schuber:

 Q. You saw the defendant take a breath test?

 A. Yes, sir.

 Q. Did you see the results of that breath test, without giving us
the numeral results, did you see the results?


 A. Yes, sir.

 Q. Your honor, I think I've laid for him to be able to answer that
question. And to your knowledge, did the defendant pass or
fail that breath test?


 A. Failed. 

 Stating someone failed a breath test is equivalent to stating that a person's blood alcohol
concentration is at least 0.10. Essentially, each statement means that the person's blood alcohol
concentration is above the legal limit. A specific objection must be made each time allegedly
inadmissible evidence is offered in order to preserve any error for review. Purtell v. State, 761
S.W.2d 360, 368 (Tex. Crim. App.1988); Ybarra v. State, 890 S.W.2d 98, 115 (Tex. App.-San
Antonio 1994, pet. ref'd). Because the same testimony came in without objection, Davis did not
preserve his complaint for appellate review.

 In addition, we point out that, without McDougall's extrapolation testimony, any evidence
with regard to Davis's blood alcohol concentration is meaningless to the result in this case.
Accordingly, any error in admitting blood alcohol concentration testimony is harmless. Hartman,
2 S.W.3d at 494.

IV. HGN Test Results Testimony:

 Finally, Davis complains that the trial court erred in allowing Officer Schuber to testify to
HGN test results. However, Officer Schuber did not testify as to results. Rather, he explained that
as he attempted to administer the test, Davis would not follow his instructions and refused to keep
his head still. And, as the State notes, Davis testified that another uniformed officer attempted to
administer the field sobriety tests, not Schuber. 

 None of Davis's sub-issues are meritorious. Accordingly, we overrule his third issue.

Ineffective Assistance of Counsel

 In his fourth and fifth issues, Davis claims he received ineffective assistance of counsel in
violation of the United States and Texas Constitutions. The right to assistance of counsel includes
the right to reasonably effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687
(1984). In assessing the effectiveness of counsel, this court applies the two-prong test set forth by
the Supreme Court in Strickland v. Washington. Holland v. State, 761 S.W.2d 307, 315 (Tex. Crim.
App. 1988). This test requires this court first to determine whether counsel's performance was
deficient. See id.; Young v. State, 991 S.W.2d 835, 837 (Tex. Crim. App. 1999); Jimenez v. State,
804 S.W.2d 334, 338 (Tex. App. -San Antonio 1991, pet. ref'd). If so, we then review whether there
is a reasonable probability that the outcome would have been different but for counsel's deficient
performance. See Strickland, 466 U.S. at 687. In order to meet this standard, the appellant must
overcome the presumption that counsel's conduct lies within the "wide range of reasonable
representation." McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), overruled on
other grounds, Mosley v. State, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998). Whether an appellant
has met this standard is judged by the totality of the representation rather than by scrutinizing
individual acts or omissions committed by trial counsel. Butler v. State, 716 S.W.2d 48, 54 (Tex.
Crim. App. 1986); Paez v. State, 995 S.W.2d 163, 170 (Tex. App. -San Antonio 1999, pet. ref'd). 

 There are four basic components to Davis's ineffective assistance complaint. Specifically,
Davis alleges that his trial counsel was ineffective for failing to adequately investigate the facts, to
adequately prepare Davis to testify at trial, to request a jury instruction on probable cause, and for
allowing evidence regarding license suspension to be placed before the jury.

I. Failure to Adequately Investigate

 Davis asserts that his "defense counsel neither investigated appellant's versions of the facts,
nor did he seek to admit into evidence that which Appellant did acquire as documentary support of
his factual claims. Additionally, defense counsel did not attempt to locate potential witnesses that
would have provided Appellant with a potentially viable defense." 

 Davis relies on his "Exhibit A" attached to his brief in making his assertion. The exhibit is
a copy of a document giving the details of the arrest, naming Davis and providing a physical
description, stating where the arrest took place, the offense, and listing two officers as the arresting
officers. These officers did not testify at Davis's trial. This document, however, was never placed
in evidence at trial and appears nowhere in the record. It, therefore, may not be considered for
purposes of this appeal.

 There is no evidence to support Davis's version of the facts, nor is there evidence suggesting
other witnesses were available to testify or that their testimony would have changed the outcome of
Davis's trial. 

II. Failure to Prepare Appellant to Testify

 In addition, Davis claims that his counsel was "objectively unreasonable in not preparing
Appellant to testify and that failure harmed Appellant." Specifically, he asserts that his trial counsel
did not adequately advise him to bring documentary support of his claims that, during the night
before his arrest, he was awake all night due to a noisy neighbor, that he walked all day in the heat,
aggravating a previously injured leg, and that he only drank one and two-thirds beers the day of the
arrest. Again, there is no evidence that such documentary evidence exists, or that it would be
beneficial to Davis's case.

III. Evidence of License Suspension

 Davis asserts his trial counsel was "objectively unreasonable in allowing incorrect
information to be placed" before the jury. Specifically, Davis complains that the State introduced an
offense report that indicated Davis's drivers license had been suspended, when, in fact, it had not.
Davis argues that his trial counsel should have attempted to redact the inadmissible language
contained in the report and that he was ineffective for not doing so.

 Davis's trial counsel objected to the admission of the report. The trial court overruled the
objection and published the report to the jury. Davis's trial counsel then cross examined Officer
Schuber about the report. Specifically, he asked Schuber if he "know[s] whether or not my client's
license was suspended?" Schuber replied "No, sir, I do not." 

 This court must presume that Davis's trial counsel was acting within the wide range of
reasonable representation in attempting to discredit Schuber. Davis has failed to overcome this
presumption. And, even assuming this is harmful error, a single act or omission by counsel does not
generally constitute ineffective assistance. Ybarra, 890 S.W.2d at 112; see Butler, 716 S.W.2d at 54;
Paez, 995 S.W.2d at 170. 

IV. Failure to Request Probable Cause Instruction

 Finally, Davis contends his trial counsel was ineffective because he failed to request a
probable cause instruction in the jury charge. After a recess, the trial court asked the parties to look
at the charge. The State had no objection. Davis's trial counsel stated:

 Mr. Scharmen: I really haven't looked at it.

 Court: Take a look at it. Look at it real quickly.

 Mr. Scharmen: Other than that, that's all right. (Indicating)

 Court: Okay. Now, Mr. Scharmen, you're due in the
14th Court of Appeals tomorrow at 1:30. They
have some special task force convening on
your behalf ...


 Based upon this exchange between his trial counsel and the court, Davis urges that his
"defense counsel was more preoccupied with his trial calendar rather than whether Appellant's
charge to the jury contained any and all defensive issues raised by the evidence." 

 At best, Davis's testimony raises an issue about probable cause. Davis testified that as he
entered the freeway, he turned on his blinker and checked his rear view mirror. At that time, he saw
no vehicles. He then proceeded into the lane, when the officer's car roared up behind him. According
to Davis, traffic was slowing in front of him, and the officer's would not let him change lanes. Davis
was afraid the officers were "gang bangers" and tried to get away from them. It is reasonable that
Davis's trial counsel did not believe that the evidence raised an issue on probable cause to stop.
Thus, the presumption stands that it was trial counsel's strategy not to request the instruction.

 We overrule Davis's fourth and fifth issues.

Factual Insufficiency

 In his sixth issue, Davis asserts the evidence is factually insufficient to support his
conviction. In reviewing a challenge to the factual sufficiency of the evidence, we consider all of the
evidence without substituting our judgment for that of the trier of fact. Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App.1996); De Los Santos v. State, 918 S.W.2d 565, 569 (Tex. App.- San
Antonio 1996, no pet.). We may set aside the judgment only where "the verdict is against the great
weight of the evidence presented at trial so as to be clearly wrong and unjust..." Clewis, 922 S.W.2d
at 135.

 The State charged Davis as follows:

 And the said affiant further deposes and says that on or about the 11th
day of JUNE, A.D., 1997, STEPHEN DAVIS, hereinafter called
defendant, did then and there drive and operate a motor vehicle in a
public place while the said defendant was intoxicated, namely; the
defendant did not have the normal use of HIS mental and physical
faculties by reason of the introduction of alcohol into HIS body.


 Officer Schuber testified that he and his partner stopped Davis while he was operating a
motor vehicle in a public place. Officers Schuber and Gomez both testified that Davis's breath
smelled of intoxicants and that he had trouble maintaining his balance at the time they stopped him. 

 Davis testified that he had been out in the heat all day and had eaten nothing. Davis suggested
that he could possibly have a fever. Davis explained that he had only one and two-thirds beers that
day and told the jury he was not intoxicated. 

 The jury could reasonably have rejected Davis's testimony and accepted the State's evidence.
The jury's verdict is not against the great weight of the evidence so as to be clearly wrong and unjust.
The evidence is, therefore, factually sufficient. We overrule Davis's sixth issue. 

Incomplete Record

 In his final issue, Davis claims that the appellate record is incomplete and that he has been
harmed by the deficiency because the missing portions are necessary to the resolution of his appeal.
Specifically, he complains that several bench conferences were unrecorded, when the court reporter
had a duty to record them. 

 Davis, however, has waived his complaint. The Texas Court of Criminal Appeals has held
that to preserve any error in the failure to record bench conferences, "one must object at some time
to the failure to record bench conferences, and, as with all objections, in order to be timely the
objection must be at a time at which the trial court may remedy the omission." Moore v. State, 999
S.W.2d 385, 397 (Tex. Crim. App. 1999). In addition,

 the record must reflect that trial counsel either (1) attempted to
stipulate with opposing counsel and the trial court the substance of
unrecorded bench conferences, (2) requested that the trial court reflect
the substance of the unrecorded bench conferences in the statement
of facts, or (3) made a formal bill of exception regarding the
substance of the unrecorded bench conference.


Id. at 398.

 Davis neither objected to the failure to record bench conferences nor made any attempt to
supplement the trial record with the substance of the unrecorded conferences. Therefore, Davis has
failed to document in the record that anything pertinent to this appeal took place at the unrecorded
bench conferences. Id. Davis waived his final issue.

Conclusion

 We overrule Davis's seven issues on appeal and affirm the trial court's judgment.


 Karen Angelini, Justice

DO NOT PUBLISH
1. The Transportation Code provides that "[e]vidence of alcohol concentration or the presence of a controlled
substance, drug, dangerous drug, or other substance obtained by analysis authorized by Section 724.014 is admissible
in a civil or criminal action."