Victor STOVALL, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–02–00185–CR.

Court of Appeals of Texas,
Tyler.

April 30, 2004.

Rehearing Overruled July 14, 2004.

Donald F. Killingsworth, Tyler, for appellant.

Michael Sandlin, Dist. Atty's Office, Dallas County, Dallas, for appellee.

Panel consisted of WORTHEN, C.J., and GRIFFITH, J.

## OPINION

SAM GRIFFITH, Justice.

After a jury trial, Appellant Victor Stovall ("Appellant") was convicted of felony driving while intoxicated (DWI) as an habitual offender. The trial court sentenced him to thirty-five years of imprisonment, and no fine. Appellant raises six issues on appeal. We reverse and remand for a new trial.

### BACKGROUND

Around 10:30 on the night of February 22, 2001, two Tyler Police Department officers were patrolling along the northwest Loop 323 when they noticed the vehicle ahead of them failing to stay in a single lane, its front tire crossing onto the dividing stripe. The police turned on the patrol car's overhead lights, and followed the car into the parking lot of a hotel, where the driver parked. Appellant got out of the car and was subsequently arrested for DWI.

Appellant was indicted for felony DWI as an habitual offender. The case was tried before a jury, who found him guilty. The trial court sentenced him to thirty-five years of imprisonment. On appeal, Appellant raises six issues: (1), (2) that the evidence is legally and factually insufficient to support the conviction, (3) that the

trial court erred in admitting evidence of the vertical gaze nystagmus test, (4) that the trial court erred in failing to quash the jurisdictional paragraphs of the indictment alleging prior DWI convictions, (5) that the trial court erred in overruling Appellant's objections to the drugs found in Appellant's car during the course of an illegal search, and (6) that the trial court erred in failing to charge the jury pursuant to Article 38.23 of the Texas Code of Criminal Procedure.

### ADMISSION OF VERTICAL GAZE NYSTAGMUS TEST

In his third issue, Appellant contends the trial court committed reversible error in admitting evidence of the vertical gaze nystagmus ("VGN") test over Appellant's objection that the predicate for the admission had not been established, as required by *Kelly v. State*, 824 S.W.2d 568 (Tex.Crim.App.1992).

### Standard of Review

We review a trial court's decision to admit or exclude scientific expert testimony under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App.2000). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* Additionally, we review the trial court's ruling in light of what was before the court at the time the ruling was made. *Id.*

### Factual Background

At trial, the State asked the arresting officer about his initial contact with Appellant at the scene of the arrest. The State then asked the officer "what horizontal gaze nystagmus means." Appellant objected that the State had not established the officer's qualifications to testify about horizontal gaze nystagmus ("HGN"). The officer then briefly described his training

and his certification in HGN testing. He testified that "nystagmus" is the involuntary jerking of the eyes, and that everybody has it.[1] He further testified that he checked Appellant's eyes for HGN, and then checked for vertical nystagmus. Appellant again objected, and at a bench conference, pointed out that although the officer had testified about his certification in HGN, there had been no showing of any training relating to VGN. Appellant further objected that there was no predicate for testimony regarding VGN, as required by *Daubert*[2] and *Kelly*, to show that the testimony relating to VGN met the requirements of Texas Rule of Evidence 702.[3] The State responded that it would ask the officer if he was certified in VGN.

Appellant countered that an officer's possible certification "does not establish the necessary predicate for scientific testimony or expert testimony" relating to VGN. When the State inquired if Appellant was asking to voir dire the officer about his VGN certification, Appellant responded that he was asking the State to "lay the predicate under 702 to show that this evidence [regarding VGN] was admissible. They haven't done that. I am entitled to a *Daubert* hearing regarding this witness's ability, regarding the whole predicate for—set forth in *Daubert* and *Kelly* with regard to this testimony." The State insisted that it had laid the predicate. The court permitted the State to continue questioning regarding the officer's certification. The officer testified that he was certified to perform both HGN and VGN testing.

When the State attempted to further inquire about the effects of HGN and VGN, Appellant again objected. At a second bench conference, Appellant pointed out that under *Daubert* and *Kelly*, the State had to establish three things prior to the admission of the VGN testimony: "[1] the underlying scientific theory with regard to [VGN], . . . [2] the technique applied and the theory has to be valid, . . . and [3] that the technique must have been applied properly on the occasion in question." The State agreed that Appellant would be right "if this scientific test had not already been accepted by the Court of Criminal Appeals." Appellant pointed out that the *Emerson* court accepted the HGN test, but did not address VGN. Appellant also stated that he was unable to find any Texas case that accepted VGN testing.

The State agreed that there are no cases expressly recognizing VGN

> as accepted by the Court of Criminal Appeals. It's exactly the same test however. They just didn't address vertical gaze nystagmus. It's exactly the same thing, only vertical not horizontal. There's [no] difference in them other than what causes it. And then it's up or down nystagmus versus side to side nystagmus. The point is the nystagmus as a whole was accepted by the Court of Criminal Appeals as [a] recognized and relied upon scientific test.

Appellant strenuously objected, noting that the sole issue in *Emerson* was HGN. After reviewing *Emerson*, which Appellant

---

1. "Nystagmus is defined as an 'involuntary rapid oscillation of the eyeballs in a horizontal, vertical, or rotary direction.'" *Emerson v. State*, 880 S.W.2d 759, 765 (Tex.Crim.App. 1994) (citing R. Berkow, ed., *The Merck Manual of Diagnosis and Therapy* 1429 (1992)).

2. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

3. Rule 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

TEX.R. EVID. 702.

had provided, the court overruled Appellant's objection and did not require the State to provide any evidence from which the court could determine the reliability of VGN testing.

The State then resumed its questioning and asked the officer to explain the difference between HGN and VGN. The officer explained that VGN would indicate the presence of a high concentration of alcohol and/or the introduction of a narcotic into the blood stream. The officer agreed with the State that vertical nystagmus is caused by either an excessive amount of alcohol or by a narcotic, and horizontal gaze nystagmus is only caused by introduction of alcohol. The officer then explained how the HGN and VGN tests were conducted. He also stated that as he conducts those tests, he looks for "clues." He was trained that "three clues would indicate a blood alcohol level at least .10." Appellant objected that the officer was not qualified to correlate the clues of nystagmus to a particular blood alcohol content.[4] The trial court overruled the objection. The officer again testified that his training indicated that three of six clues would indicate an alcohol blood level of higher than .10, and that he saw six clues as well as vertical nystagmus in each of Appellant's eyes. The officer testified about other field tests conducted. He also testified that after Appellant was placed under arrest and was sitting in the back seat of the patrol car, the other officer conducted a search of Appellant's vehicle incident to the arrest. Appellant objected to the State's inquiry about what other charges were made against Appellant as a result of that search. The court overruled the objection, and the officer testified that Appellant had also been charged with possession of a controlled substance. When the State asked what drug the officer determined was found in Appellant's vehicle, based on the field drug test kit, Appellant again objected, contending that the search was illegal. The objection was overruled, and the officer testified that another officer performed the test kit on the narcotic located in Appellant's car.

The second officer testified about searching Appellant's car for contraband after Appellant was placed in the police car after being arrested. He testified that he found a plastic bag with prescription pills and a piece of twisted plastic containing a small rock of crack cocaine. Over objection, the officer testified about conducting the field test on the rock. A Department of Public Safety (DPS) chemist testified that the rock contained cocaine and weighed 0.10 gram.

### Admission of Novel Scientific Test

The State contended at trial that VGN is essentially the same as the HGN test that the court of criminal appeals considered

---

4. In *Emerson,* the court of criminal appeals stated the following:

> We are unable to conclude, however, that the HGN technique is a sufficiently reliable indicator of *precise BAC* [blood alcohol content]. Given the results of NHTSA's [National Highway Traffic Safety Administration] lab experiment, resulting in an average margin of error of .03%, and the dearth of other published writings on the accuracy of the NHTSA formula and technique, we cannot take judicial notice of the reliability of the HGN technique within the context of determining precise BAC based on the angle of onset of nystagmus.... A witness may not use HGN evidence to quantify the defendant's BAC. We have already concluded that we are unable to take judicial notice of the reliability of the formula and technique advocated by NHTSA to determine BAC based on angle of onset of nystagmus. NHTSA's own study indicates a margin of error of .03% when its formula is used to determine BAC level based on the angle of onset. That margin is too high to allow estimations of a defendant's BAC based on the angle of onset to be admissible.

*Emerson,* 880 S.W.2d at 769 (emphasis in original).

and held admissible in *Emerson*. Although there was a discussion of nystagmus and the effect of alcohol on nystagmus, the *Emerson* court, in its extensive opinion tracing the various studies and scientific research supporting the validity and reliability of the HGN, did not even mention a VGN test. More significantly, our search of case law going back to 1988 suggests that VGN was mentioned in only two published cases. *See Quinney v. State*, 99 S.W.3d 853 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *Coward v. State*, 993 S.W.2d 307 (Tex.App.-San Antonio, 1999, no pet.). In *Coward*, the only reference to VGN was when the arresting officer, in the course of testifying about events at the scene of an arrest in a DWI case, merely mentioned that he had performed a VGN test. However, the issue on appeal related to the Intoxilyzer results and not VGN. *See id.* at 308. In *Quinney*, the Houston court held that VGN is "novel scientific evidence and is subject to the requirements of *Kelly v. State.*" *Quinney*, 99 S.W.3d at 858.

 In addressing the admissibility of the HGN test, the *Emerson* court noted that where a test is based on a scientific theory, and the scientific theory or technique has not been determined to be reliable, the admission of that novel scientific evidence is governed by Texas Rule of Criminal Evidence 702.[5] *See Emerson*, 880 S.W.2d at 763. The threshold determination in an inquiry into the admissibility of expert testimony under Rule 702 is whether such testimony is helpful to the trier of fact. *Id.* (citing *Pierce v. State*, 777 S.W.2d 399, 414 (Tex.Crim.App.1989)). For such testimony to be helpful, the basis of the testimony must be reliable. *Id.* (citing *Kelly*, 824 S.W.2d at 572). To be considered reliable, evidence based on sci-

entific theory must satisfy three criteria: 1) the underlying scientific theory must be valid; 2) the technique applying the theory must be valid; and 3) the technique must have been applied properly on the occasion in question. *Id.* at 573. To assist courts in making a determination of reliability, the court of criminal appeals formulated the following non-exclusive list of relevant factors for consideration: 1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community if such community can be ascertained; 2) the existence of literature supporting or rejecting the underlying scientific theory and technique; 3) the clarity with which the underlying scientific theory and technique can be explained to the court; 4) the potential rate of error of the technique; 5) the availability of other experts to test and evaluate the technique; 6) the qualifications of the expert testifying; and 7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Id.*

The *Emerson* court concluded that because the HGN test is based on the scientific theory that alcohol affects human eye movement, the test must satisfy the three requirements set forth in *Kelly* to be admissible under Rule 702. Because the VGN test is based on a similar scientific theory, we conclude that the VGN test must also satisfy the *Kelly* requirements to be admissible under rule 702. Consequently, the State, as the proponent of the evidence, had the burden of producing evidence of the underlying scientific theory behind the expert testimony. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App. 2000).

5. Since March 1, 1998, the Texas Supreme Court and the Texas Court of Criminal Appeals have jointly promulgated the "Texas Rules of Evidence." The present Texas Rule of Evidence 702 is identical to Texas Rule of Criminal Evidence 702 cited in *Emerson*.

### Trial court as gatekeeper

A trial court's role in determining the admissibility of a novel scientific test is that of "gatekeeper." The trial court's "gatekeeping responsibility" requires that the trial judge "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 113 S.Ct. at 2795. The Supreme Court noted that the federal rules, including Rule 702 which is identical to Texas Rule of Evidence 702, "were designed to depend primarily upon lawyer-adversaries and sensible triers of fact to evaluate conflicts." *Id.*, 509 U.S. at 589, 113 S.Ct. at 2794. Therefore, the trial court's proper response when a party offers scientific evidence is to determine at the outset whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. *Id.*, 509 U.S. at 592–93, 113 S.Ct. at 2796; *see also Kelly*, 824 S.W.2d at 568 (expert testimony must be sufficiently reliable and relevant to assist the trier of fact in its fact-finding duty). Thus, the relevant criteria must be proven to the trial court, outside the presence of the jury, before the evidence may be admitted. *Id.* at 573. If the trial court is persuaded, the evidence should be admitted for the jury's consideration. *Id.*

In the case at hand, Appellant requested a *Daubert* hearing to determine the reliability of the VGN test. However, the trial court denied Appellant's request. The State maintained that the proper predicate had been laid and, when permitted to proceed, did not introduce evidence relating to the reliability issue. Therefore, the State did not satisfy the *Kelly* criteria for establishing the admissibility of the officer's testimony about the VGN test. The court of criminal appeals has stated that

> [t]rial courts are not required to reinvent the scientific wheel in every trial. However, some trial court must actually examine and assess the reliability of the particular scientific wheel before other courts may ride along behind. Some court, somewhere, has to conduct an adversarial gatekeeping hearing to determine the reliability of the given scientific theory and its methodology.

*Hernandez v. State*, 116 S.W.3d 26, 29 (Tex.Crim.App.2003). No Texas court has assessed the reliability of VGN tests. Therefore, the trial court's admission of the challenged testimony without making such an assessment is outside the zone of reasonable disagreement and constitutes an abuse of discretion. *See Kelly*, 824 S.W.2d 568.

### Harm analysis

A violation of the evidentiary rules that results in the erroneous admission of evidence is nonconstitutional error. *See Potier v. State*, 68 S.W.3d 657, 662–63 (Tex.Crim.App.2002) ("Erroneous evidentiary rulings rarely rise to the level of denying ... fundamental constitutional rights ..."); *see also King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). A non-constitutional error is to be disregarded unless the error affects a substantial right. TEX.R.APP. P. 44.2(b). Consequently, "[a] criminal conviction should not be overturned for a non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Reese v. State*, 33 S.W.3d 238, 243 (Tex.Crim.App.2000) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998)).

In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim.App.2002). The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable. *Id.* Whether the State emphasized the error, whether the erroneously admitted evidence was cumulative, and whether it was elicited from an expert are additional factors for consideration. *Id.* at 356; *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App.2001).

In the case at hand, the arresting officer testified that he had been certified both for horizontal and vertical gaze nystagmus tests. The officer also testified that the vertical nystagmus would indicate either a high concentration of alcohol "and/or the introduction of a narcotic" into the blood system. *Compare with Quinney*, 99 S.W.3d at 859 (arresting officer testified that VGN test would indicate narcotic use).[6] The State then introduced a rock of crack cocaine found in a search of Appellant's car after his arrest. The arresting officer described the search and testified that a second officer conducted a field drug test on the suspected narcotic. A third officer testified about transporting the narcotic to the DPS lab. The DPS lab technician testified about testing the narcotic and identified the object as cocaine. The transcript of the trial, exclusive of opening and closing arguments, consists of over one hundred and eighty pages. Seventy of those pages relate to the VGN tests and the cocaine, including the attorneys' discussions of the admissibility of the VGN test, testimony from the State's witnesses regarding the efficacy of the VGN test and the VGN test's relation to detecting narcotic usage, and the search for or the testing of the narcotic. The State, in its closing argument, stated that the VGN test indicated either an excess of alcohol or the introduction of illegal narcotics in the body, and that Appellant had drugs under the seat of his car. Thus, throughout the trial, the State interlaced the efficacy of the VGN test and the crack cocaine found in the car.

Had the State offered evidence which, to the satisfaction of the trial court, established the admissibility of the VGN test, this court would afford the proper deference to the trial court's ruling. However, where almost forty percent of the entire trial is devoted either to the novel, but unproven, scientific test or the admission of the cocaine by which the State sought to buttress the VGN's unproven results, we are unable to state with confidence that the jury was able to render its decision based on the properly admitted testimony. In sum, after reviewing the record as a whole, we are unable to say with fair assurance that the admission of the testimony regarding the VGN test did not influence the jury or had but a slight effect. Accordingly, we sustain Appellant's third issue.

### CONCLUSION

The trial court abused its discretion in admitting testimony regarding the VGN test without conducting a *Daubert/Kelly* hearing to establish the reliability of the

---

**6.** In *Quinney,* unlike the present case, evidence of narcotics was not admitted to buttress the State's argument that the VGN test detected a loss of faculties due to the ingestion of narcotics.

test. Furthermore, based upon our review of the record as a whole, we conclude that the error was not harmless. Accordingly, the judgment of the trial court is *reversed*, and the cause is *remanded* for a new trial. Because Appellant's third issue is dispositive, we need not address his remaining issues. Tex.R.App. P. 47.1.

DeVASTO, J., not participating.