Anthony James **QUINNEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–02–00129–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 27, 2003.

---

Rick DeToTo, Houston, for appellants.

Jessica Jinx D'Anna, Houston, for appellees.

Panel consists of Justices YATES, HUDSON, and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

Anthony James Quinney appeals his conviction for misdemeanor driving while intoxicated. He contends the trial court erred in admitting evidence of horizontal gaze nystagmus, vertical gaze nystagmus, and resting nystagmus. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a traffic stop in March 2001. A citizen reported seeing an individual driving erratically on a Houston street. Officer Todd Harris, who was dispatched to investigate the report, observed that the vehicle was being driven very slowly and was swerving between lanes. At one point, the vehicle rode up on the curb. Officer Harris turned on his vehicle's emergency lights to signal the driver to stop. The driver, later identified as appellant, stopped his car, stepped out, and inexplicably began to push his car into the traffic median. Officer Harris asked appellant to perform certain field sobriety tests. Appellant appeared to be incapable of comprehending Officer Harris's instructions. Because he suspected appellant might have a mental illness, Officer Harris telephoned appellant's mother to determine if appellant was mentally ill. When Officer Harris learned that appellant was not mentally ill, he placed appellant in the patrol car. Officer Harris then called for a fellow police officer, who was trained in the detection of intoxication. Officer Correia arrived on the scene shortly thereafter.

Officer Correia was certified by the State of Texas to conduct field sobriety tests, including horizontal gaze nystagmus, walk and turn, and one-leg stand. Officer Correia had also taken the Drug Recognition Expert course, which teaches officers how to determine whether a person is under the influence of narcotics and/or alcohol. Officer Correia performed several field sobriety tests on appellant. He first observed that appellant's pupils were constricted, which is a sign that appellant might have used a narcotic analgesic. Of-

ficer Correia also noticed appellant's speech pattern was incoherent and that he repeated himself and became agitated. Appellant appeared to have a dry mouth and was licking his lips, which is also an indication of narcotic use. When Officer Correia asked appellant to perform certain field sobriety tests, such as walk and turn, appellant could not comprehend or follow the instructions.

Officer Correia performed horizontal gaze nystagmus ("HGN") and vertical gaze nystagmus ("VGN") tests on appellant. According to the officer's trial testimony, when he began to administer the tests, he noticed appellant had "resting nystagmus," a condition characterized by involuntary jerking of the eyes. Officer Correia testified that appellant demonstrated the maximum six clues of intoxication during the HGN test. The results of the VGN test indicated that appellant had either reached his upper limit of alcohol tolerance or was under the influence of narcotics. Neither Officer Harris nor Officer Correia detected an odor of alcohol on appellant's breath. After conducting the field sobriety tests, Officer Correia concluded appellant was under the influence of narcotics.

Prior to trial, appellant filed a motion in limine asking the trial court to restrict the State from introducing evidence of VGN testing and results. The trial court conducted a hearing at which Officer Correia testified that VGN testing is performed as a part of the HGN test. Officer Correia also testified that the VGN test was usually used to determine whether the suspect was under the influence of narcotics (as opposed to alcohol), but he did not know the underlying scientific theory behind the VGN test. The trial court denied appellant's motion in limine. At trial, appellant objected to evidence of HGN and VGN testing and to Officer Correia's testimony concerning "resting nystagmus."

Appellant was convicted of misdemeanor driving while intoxicated and sentenced to 180 days in the Harris County Jail. Appellant appeals his conviction contending the trial court abused its discretion in admitting the nystagmus test results.

## STANDARD OF REVIEW

We review the admission of scientific evidence under an abuse-of-discretion standard. *Emerson v. State,* 880 S.W.2d 759, 761 (Tex.Crim.App.1994). We will uphold the trial court's ruling if it was within the zone of reasonable disagreement. *See Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000).

## ANALYSIS AND DISCUSSION

### Did the trial court err in admitting evidence of the horizontal gaze nystagmus test?

In his first issue, appellant contends the trial court erred in admitting evidence of the HGN test because the predicate for admitting such evidence was not satisfied. Testimony concerning the HGN test is considered novel scientific evidence and thus is subject to the requirements of *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App. 1992). *See Emerson,* 880 S.W.2d at 763. The admissibility of novel scientific evidence is governed by Texas Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

TEX.R. EVID. 702.

To constitute scientific knowledge that will assist the trier of fact, the proposed testimony must be relevant and

reliable. *Kelly*, 824 S.W.2d at 572. To be considered reliable, evidence based on a scientific theory must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been applied properly on the occasion in question. *Id.* at 573. Nystagmus is an involuntary rapid oscillation of the eyes in a horizontal, vertical, or rotary direction. *Emerson*, 880 S.W.2d at 765 (citing *The Merck Manual of Diagnosis and Therapy* 1429 (R. Berkow ed., 1992)). Horizontal gaze nystagmus refers to the inability of the eyes to smoothly follow an object moving horizontally across the field of vision, particularly when the object is held at an angle of forty-five degrees or more to the side. *Webster v. State*, 26 S.W.3d 717, 719 n. 1 (Tex.App.-Waco 2000, pet. ref'd) (citing *National Highway Traffic Safety Admin., U.S. Dep't of Transp., DWI Detection and Standardized Field Sobriety Testing, Student Manual* VIII—12–15 (1995) ("NHTSA Manual")). Consumption of alcohol exaggerates nystagmus to the degree it can be recognized by the naked eye. *Emerson*, 880 S.W.2d at 766. Nystagmus also may be caused by factors other than alcohol, such as narcotic use, neurological disorders, or brain damage. *Id.*

In *Emerson*, the Court of Criminal Appeals examined the underlying scientific theory of HGN testing and determined the science was valid. *Emerson*, 880 S.W.2d at 769. By making that determination, the court relieved the State of the burden of presenting scientific evidence with regard to HGN testing. *Gullatt v. State*, 74 S.W.3d 880, 883–84 (Tex.App.-Waco 2002, no pet.). The *Emerson* court found that testimony concerning an individual's performance on the HGN test is admissible if it is shown that the witness testifying is qualified as an expert on the HGN test. *Emerson*, 880 S.W.2d at 769. In the case of a police officer or other law enforcement official, this requirement is satisfied by proof that the officer has received practitioner certification by the State of Texas to administer the HGN test. *Id.*

At a pretrial hearing to determine whether nystagmus evidence was admissible, Officer Correia testified he was certified by the State of Texas to administer the HGN test. Thus, according to *Emerson*, Officer Correia was qualified as an expert in the administration and technique of the HGN test. *Id.* Appellant contends the trial court nevertheless erred in admitting the evidence because the State did not meet the third requirement of *Kelly* in that it did not prove the test was applied properly on the occasion in question. Appellant contends Officer Correia did not properly administer the HGN test because he did not follow the NHTSA Manual. In conducting the HGN test, an officer looks for three clues as to each of the suspect's eyes. NHTSA Manual at VIII—17. They are: (1) the eye cannot follow a moving object smoothly; (2) distinct nystagmus when the eye is at maximum deviation; and (3) an onset of nystagmus before the eye has moved forty-five degrees to the side. *Id.* The 1995 DWI Detection Manual published by the NHTSA provides the following procedures for conducting the HGN test:

> Begin by asking "are you wearing contact lenses", make a note whether or not the suspect wears contacts before starting the test. If the suspect is wearing eyeglasses, have them removed.

> Give the suspect the following instructions from a position of interrogation (FOR OFFICER SAFETY KEEP YOUR WEAPON AWAY FROM THE SUSPECT):

> "I am going to check your eyes."

> "Keep your head still and follow this stimulus with your eyes only."

"Keep focusing on this stimulus until I tell you to stop."

Position the stimulus approximately 12–15 inches from the suspect's nose and slightly above eye level. Check the suspect's eyes for the ability to track together. Move the stimulus smoothly across the suspect's entire field of vision. Check to see if the eyes track the stimulus together or one lags behind the other. If the eyes don't track together it could indicate a possible medical disorder, injury, or blindness.

Next, check to see that both pupils are equal in size. If they are not, this may indicate a head injury.

Appellant contends Officer Correia did not follow the above procedures correctly because he combined the step which calls for the examiner to check for equal pupil size with the step that requires a check for the ability of the eyes to track together. The only pre-test screening required by the NHTSA Manual is for the officer to determine whether the suspect wears contact lenses or eyeglasses. Because Officer Correia testified that he checked appellant for all of the indicators required by the NHTSA Manual and the manual does not require that pupil size be checked at a different time, he properly performed the screening as required by the manual. *See Webster*, 26 S.W.3d at 723.

Appellant further contends that Officer Correia did not pass the stimulus in front of appellant's eyes the required number of times to properly administer the test. Appellant argued during the pretrial hearing that each step covered in the NHTSA Manual required a separate pass of the stimulus in front of the eye. Contrary to appellant's assertion, the manual does not require a minimum number of passes.

Because Officer Correia conducted every test required by the NHTSA Manual, we conclude he performed the screening properly on the occasion in question. All three criteria of *Kelly* were satisfied, and Officer Correia's testimony concerning the results of the HGN test was admissible. Accordingly, we overrule appellant's first issue.

**Did the trial court err in admitting evidence of VGN and resting nystagmus?**

In his second and third issues, appellant contends the trial court erred in admitting evidence of VGN and resting nystagmus because the court failed to determine the underlying scientific reliability of these tests. At the pretrial hearing and at trial, Officer Correia testified that he performed a VGN test on appellant. He testified that when performing this test, he holds the stimulus above the suspect's eyes for four seconds. Officer Correia testified that VGN shows whether a suspect has reached his tolerance level for alcohol or is under the influence of a narcotic, most likely, phenylcyclohexyl piperidine (PCP). Officer Correia further testified that VGN testing is an extension of HGN testing and is considered the same test, but instead of the stimulus being moved from side to side, it is moved vertically. Officer Correia testified that he did not know the underlying scientific theory behind VGN testing.

With regard to resting nystagmus, Officer Correia testified that before he began to move the stimulus in front of appellant's eyes, he noticed appellant's eyes were jerking involuntarily. Officer Correia explained that this phenomenon, known as "resting nystagmus," is indicative of narcotics use. The State did not present evidence of the underlying scientific theory behind resting nystagmus.

■ Testimony concerning VGN and resting nystagmus, like testimony concerning HGN, is considered novel scientific evidence and is subject to the requirements of *Kelly v. State*. *See Emerson*, 880 S.W.2d at 763; *Kelly*, 824 S.W.2d at 568. Application of the *Kelly* factors is germane

to evaluating whether an expert's opinion will withstand scrutiny outside of the courtroom. Expert testimony that is not grounded in methods and procedures acknowledged by scientists in the particular field of study amount to no more than subjective belief or unsupported speculation. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–90, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993). Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under Texas Rule of Evidence 702. *Kelly,* 824 S.W.2d at 568.

 The proponent of expert testimony based on a scientific theory must show by clear and convincing evidence that it is: (1) reliable; and (2) relevant to assist the trier of fact in its fact-finding duty. *Id.* at 572. Consequently, the State, as the proponent of the evidence, had the burden of producing evidence of the underlying scientific theory behind the expert testimony. *Wyatt v. State,* 23 S.W.3d 18, 27 (Tex. Crim.App.2000). In *Emerson,* the Court of Criminal Appeals exhaustively examined the scientific theory behind HGN testing, but did not address the theory behind VGN or resting nystagmus testing. *See Emerson,* 880 S.W.2d at 763–69. For VGN and resting nystagmus evidence to be admissible, the proponent must present evidence of similar research of the scientific theory underlying those tests. *See Wyatt,* 23 S.W.3d at 27. Officer Correia testified that VGN and resting nystagmus tests are extensions of the HGN test, but that VGN and resting nystagmus indicate the suspect is under the influence of narcotics as opposed to alcohol. Without scientific proof behind this theory, we cannot find the evidence admissible. *See Kelly,* 824 S.W.2d at 568. Because the State failed to show that evidence of VGN and resting nystagmus testing was reliable and relevant to assist the trier of fact, we conclude the trial court erred in admitting the evidence. But in this case, the admission of evidence of VGN and resting nystagmus tests was harmless.

 A reviewing court is to disregard nonconstitutional error that does not affect the substantial rights of the defendant. Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997). A criminal conviction should not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or had but a slight effect. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim.App.1998).

The evidence shows that appellant was driving at a speed well below the thirty-mile-per-hour speed limit. His car was weaving from lane to lane and, at one point, he drove his car onto the curb. When appellant saw Officer Harris's emergency lights, he exited his car and attempted to push it into the median for no apparent reason. When Officer Harris attempted to administer the field sobriety tests, appellant could not comprehend the instructions. Based on appellant's behavior at the scene, Officer Harris concluded that appellant was not competent to make arrangements regarding what should be done with his car after his arrest. Before he performed any nystagmus tests, Officer Correia noticed appellant's pupils were constricted, which is a sign that appellant might have used a narcotic analgesic. Officer Correia also noticed appellant's speech pattern was incoherent and that he repeated himself and became agitated. Appellant appeared to have a dry mouth and was licking his lips, which is also an indication of narcotic use. After performing the HGN test, Officer Correia detected the maximum number of clues to deter-

mine intoxication. Both officers concluded appellant did not have the mental and physical capacity to operate a motor vehicle.

The jury was charged that a person could be intoxicated if he did not have the "normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substances [sic], a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body." The application paragraph instructed jurors to find appellant guilty of driving while intoxicated if they found he did not have the normal use of his mental or physical faculties because of the introduction of an unknown drug into his body. According to Officer Correia, VGN and resting nystagmus testing revealed that appellant was under the influence of a narcotic as opposed to alcohol. The jury charge, however, did not require the jury to determine what substance caused appellant's intoxication. Therefore, the trial court's erroneous admission of VGN and resting nystagmus evidence did not affect appellant's substantial rights and was harmless in light of other properly admitted evidence. *See Brooks v. State,* 990 S.W.2d 278, 287 (Tex.Crim.App.1999). Accordingly, we overrule appellant's second and third issues.

Having overruled all of appellant's issues, we affirm the trial court's judgment.