NO. 12-02-00185-CR

 

                     IN THE COURT OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER, TEXAS

VICTOR
STOVALL,                                         '                 APPEAL
FROM THE 241ST

APPELLANT

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE                                                       '                 SMITH
COUNTY, TEXAS

                                                                                                                                         
                  

                                                                     OPINION

After
a jury trial, Appellant Victor Stovall (AAppellant@) was convicted of felony driving while
intoxicated (DWI) as an habitual offender. 
The trial court sentenced him to thirty-five years of imprisonment, and
no fine.   Appellant raises six issues on
appeal. We reverse and remand for a new trial.

 

Background

Around
10:30 on the night of February 22, 2001, two Tyler Police Department officers
were patrolling along the northwest Loop 323 when they noticed the vehicle
ahead of them failing to stay in a single lane, its front tire crossing onto
the dividing stripe. The police turned on the patrol car=s
overhead lights, and followed the car into the parking lot of a hotel, where
the driver parked.  Appellant got out of
the car and was subsequently arrested for DWI.








Appellant
was indicted for felony DWI as an habitual offender.  The case was tried before a jury, who found
him guilty.  The trial court sentenced
him to thirty-five years of imprisonment. 
On appeal, Appellant raises six issues: (1), (2) that the evidence is
legally and factually insufficient to support the conviction, (3) that the
trial court erred in admitting evidence of the vertical gaze nystagmus test, (4) that the trial court erred in failing
to quash the jurisdictional paragraphs of the indictment alleging prior DWI
convictions, (5) that the trial court erred in overruling Appellant=s objections to the drugs found in
Appellant=s car
during the course of an illegal search, and (6) that the trial court erred in
failing to charge the jury pursuant to Article 38.23 of the Texas Code of
Criminal Procedure.  

 

Admission of Vertical Gaze Nystagmus
Test

In
his third issue, Appellant contends the trial court committed reversible error
in admitting  evidence of the vertical
gaze nystagmus (AVGN@) 
test over Appellant=s
objection that the predicate for the admission had not been established, as
required by Kelly v. State, 824 S.W.2d 568 (Tex. Crim. App. 1992). 

Standard
of Review

We
review a trial court=s
decision to admit or exclude scientific expert testimony under an abuse of
discretion standard.  Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim.
App. 2000).  We must uphold the trial
court=s ruling
if it is within the zone of reasonable disagreement.  Id.  Additionally, we review the trial court=s ruling in light of what was before
the court at the time the ruling was made. 
Id.

Factual
Background 








At
trial, the State asked the arresting officer about his initial contact with
Appellant at the scene of the arrest. 
The State then asked the officer Awhat
horizontal gaze nystagmus means.@ 
Appellant objected that the State had not established the officer=s qualifications to testify about
horizontal gaze nystagmus (AHGN@). 
The officer then briefly described his training and his certification in
HGN testing.    He testified that Anystagmus@ is the involuntary jerking of the
eyes, and that everybody has it.[1]   He further testified that he checked
Appellant=s eyes
for HGN, and then checked for vertical nystagmus.  Appellant again objected, and at a bench
conference, pointed out that although the officer had testified about his
certification in HGN, there had been no showing of any training relating to VGN.  Appellant further objected that there was no
predicate for testimony regarding VGN, as required by Daubert[2]
and Kelly, to show that the testimony relating to VGN met the
requirements of Texas Rule of Evidence 702.[3]  The State responded that it would ask the
officer if he was certified  in VGN.

Appellant
countered that an officer=s
possible certification Adoes
not establish the necessary predicate for scientific testimony or expert
testimony@ relating
to VGN.  When the State inquired if
Appellant was asking to voir dire the officer about
his VGN certification, Appellant responded that he was asking the State to Alay the predicate under 702 to show
that this evidence [regarding VGN] was admissible.  They haven=t
done that.  I am entitled to a Daubert hearing regarding this witness=s ability, regarding the whole
predicate for  - - set forth in Daubert and Kelly with regard
to this testimony.@  The State insisted that it had laid the
predicate.  The court permitted the State
to continue questioning regarding the officer=s
certification.  The officer testified
that he was certified to perform both HGN and VGN testing.  

When
the State attempted to further inquire about the effects of HGN and VGN,
Appellant again objected.  At a second
bench conference, Appellant pointed out that under Daubert
and Kelly, the State had to establish three things prior to the
admission of the VGN testimony: A[1]
the underlying scientific theory with regard to [VGN], . . .  [2] the technique applied and the theory has
to be valid, . . .  and [3] that the
technique must have been applied properly on the occasion in question.@ 
The State agreed that Appellant would be right Aif
this scientific test had not already been accepted by the Court of Criminal
Appeals.@  Appellant pointed out that the Emerson
court accepted the HGN test, but did not address VGN.  Appellant also stated that he was unable to
find any Texas case that accepted VGN testing.








The
State agreed that there are no cases expressly recognizing VGN 

 

as accepted by the Court of Criminal Appeals.  It=s
exactly the same test however.  They just
didn=t address vertical gaze nystagmus.
 It=s
exactly the same thing, only vertical not horizontal.  There=s [no]
difference in them other than what causes it. 
And then it=s up or down nystagmus
versus side to side nystagmus.  The point is the nystagmus
as a whole was accepted by the Court of Criminal Appeals as [a] recognized and
relied upon scientific test.

 

 

Appellant
strenuously objected, noting that the sole issue in Emerson was
HGN.  After reviewing Emerson,
which Appellant had provided, the court overruled Appellant=s objection and did not require the
State to provide any evidence from which the court could determine the
reliability of VGN testing.








The
State then resumed its questioning and asked the officer to explain the
difference between HGN and VGN.  The
officer explained that VGN would indicate the presence of a high concentration
of alcohol and/or the introduction of a narcotic into the blood stream.  The officer agreed with the State that
vertical nystagmus is caused by either an excessive
amount of alcohol or by a narcotic, and horizontal gaze nystagmus
is only caused by introduction of alcohol. 
The officer then explained how the HGN and VGN tests were
conducted.  He also stated that as he
conducts those tests, he looks for Aclues.@ 
He was trained that Athree
clues would indicate a blood alcohol level at least .10.@  Appellant objected that the officer was not
qualified to correlate the clues of nystagmus to a
particular blood alcohol content.[4]  The trial court overruled the objection.  The officer again testified that his training
indicated that three of six clues would indicate an alcohol blood level of
higher than .10, and that he saw six clues as well as vertical nystagmus in each of Appellant=s
eyes.  The officer testified about other
field tests conducted.  He also testified
that after Appellant was placed under arrest and was sitting in the back seat
of the patrol car, the other officer conducted a search of Appellant=s vehicle incident to the arrest.  Appellant objected to the State=s inquiry about what other charges were
made against Appellant as a result of that search.  The court overruled the objection, and the
officer testified that Appellant had also been charged with possession of a
controlled substance.  When the State
asked what drug the officer determined was found in Appellant=s vehicle, based on the field drug test
kit, Appellant again objected, contending that the search was illegal.  The objection was overruled, and the officer
testified that another officer performed the test kit on the narcotic located
in Appellant=s car. 

The
second officer testified about searching Appellant=s
car for contraband after Appellant was placed in the police car after being
arrested.  He testified that he found a
plastic bag with prescription pills and a piece of twisted plastic containing a
small rock of crack cocaine.  Over
objection, the officer testified about conducting the field test on the
rock.  A Department of Public Safety
(DPS) chemist testified that the rock contained cocaine and weighed 0.10 gram.

Admission
of Novel Scientific Test

The
State contended at trial that VGN is essentially the same as the HGN test that
the court of criminal appeals considered and held admissible in Emerson.  Although there was a discussion of nystagmus and the effect of alcohol on nystagmus,
the Emerson court, in its extensive opinion tracing the various
studies and scientific research supporting the validity and reliability of the
HGN, did not even mention a VGN test. 
More significantly, our search of case law going back to 1988 suggests
that VGN was mentioned in only two published cases.  See  Quinney
v. State, 99 S.W.3d 853 (Tex. App.CHouston
[14th Dist.] 2003, no pet.); Coward v. State, 993 S.W.2d 307
(Tex. App.CSan
Antonio, 1999, no pet.).  In Coward,
the only reference to VGN was when the arresting officer, in the course of
testifying about events at the scene of an arrest in a DWI case, merely mentioned
that he had performed a VGN test. However, the issue on appeal related to the Intoxilyzer results and not VGN.  See id. at 308.  In Quinney,
the Houston court held that VGN is Anovel
scientific evidence and is subject to the requirements of Kelly v. State.@ 
Quinney,  99 S.W.3d at 858. 








In
addressing the admissibility of the HGN test, the Emerson court
noted that where a test is based on a scientific theory, and the scientific
theory or technique has not been determined to be reliable, the admission of
that novel scientific evidence is governed by Texas Rule of Criminal Evidence
702.[5]  See Emerson, 88 S.W.2d at 763.  The
threshold determination in an inquiry into the admissibility of expert
testimony under Rule 702 is whether such testimony is helpful to the trier of fact. Id. (citing Pierce v.
State, 777 S.W.2d 399, 414 (Tex. Crim. App.
1989)).  For such testimony to be
helpful, the basis of the testimony must be reliable.  Id. (citing Kelly,
824 S.W.2d at 572).  To be considered
reliable, evidence based on scientific theory must satisfy three criteria: 1)
the underlying scientific theory
must be valid; 2) the technique applying the theory must be valid; and 3) the
technique must have been applied properly on the occasion in question.  Id. at 573.  To assist courts in making a determination of
reliability, the court of criminal appeals formulated the following
non-exclusive list of relevant factors for consideration: 1) the extent to
which the underlying scientific theory and technique are accepted as valid by
the relevant scientific community if such community can be ascertained; 2) the
existence of literature supporting or rejecting the underlying scientific
theory and technique; 3) the clarity with which the underlying scientific
theory and technique can be explained to the court; 4) the potential rate of
error of the technique; 5) the availability of other experts to test and
evaluate the technique; 6) the qualifications of the expert  testifying; and 7) the experience and skill
of the person(s) who applied the technique on the occasion in question. Id.

The
Emerson court concluded that because the HGN test is based on the
scientific theory that alcohol affects human eye movement, the test must
satisfy the three requirements set forth in Kelly to be
admissible under Rule 702.  Because the
VGN test is based on a similar scientific theory, we conclude that the VGN test
must also satisfy the Kelly requirements to be admissible under
rule 702.  Consequently, the State, as
the proponent of the evidence, had the burden of producing evidence of the
underlying scientific theory behind the expert testimony.  Wyatt v. State, 23 S.W.3d 18,
27 (Tex. Crim. App. 2000).








Trial
court as gatekeeper

A
trial court=s role in
determining the admissibility of a novel scientific test is that of Agatekeeper.@  The trial court=s
Agatekeeping
responsibility@ requires
that the trial judge Aensure
that any and all scientific testimony or evidence admitted is not only
relevant, but reliable.@
Daubert, 509 U.S. at 589,
113 S. Ct. at 2795.  The Supreme Court
noted that the federal rules, including Rule 702 which is identical to Texas
Rule of Evidence 702, Awere
designed to depend primarily upon lawyer-adversaries and sensible triers of fact to evaluate conflicts.@ 
Id., 509 U.S. at 589, 113 S. Ct. at 2794. Therefore, the
trial court=s proper
response when a party offers scientific evidence is to determine at the outset
whether the expert is proposing to testify to (1) scientific knowledge that (2)
will assist the trier of fact to understand or
determine a fact in issue.  This entails
a preliminary assessment of whether the reasoning or methodology underlying the
testimony is scientifically valid and of whether that reasoning or methodology
properly can be applied to the facts in issue. 
Id., 509 U.S. at 592-93, 113 S. Ct. at 2796; see also Kelly,
824 S.W.2d at 568 (expert testimony must be sufficiently reliable and relevant
to assist the trier of fact in its fact-finding
duty).  Thus, the relevant criteria must
be proven to the trial court, outside the presence of the jury, before the
evidence may be admitted.  Id.
at 573.  If the trial court is persuaded,
the evidence should be admitted for the jury=s
consideration.  Id.  

In
the case at hand, Appellant requested a Daubert
hearing to determine the reliability of the VGN test.  However, the trial court denied Appellant=s request.  The State maintained that the proper
predicate had been laid and, when permitted to proceed, did not introduce
evidence relating to the reliability issue. 
Therefore, the State did not satisfy the Kelly criteria
for establishing the admissibility of the officer=s
testimony about the VGN test.  The court
of criminal appeals has stated that 

 

[t]rial courts are not
required to re-invent the scientific wheel in every trial.  However, some trial court must actually
examine and assess the reliability of the particular scientific wheel before
other courts may ride along behind.  Some
court, somewhere, has to conduct an adversarial gatekeeping
hearing to determine the reliability of the given scientific theory and its
methodology.  

 

 








Hernandez v. State, 116 S.W.2d
26, 29 (Tex. Crim. App. 2003).  No Texas court has assessed the reliability
of VGN tests.  Therefore, the trial court=s admission of the challenged testimony
without making such an assessment is outside the zone of reasonable
disagreement and constitutes an abuse of discretion.  See Kelly, 824 S.W.2d 568.            

Harm
analysis 

A
violation of the evidentiary rules that results in the erroneous admission of
evidence is nonconstitutional error.  See Potier
v. State, 68 S.W.3d 657, 662-63 (Tex. Crim.
App. 2002) (AErroneous
evidentiary rulings rarely rise to the level of denying . . . fundamental
constitutional rights . . . @);
see also King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  A
non-constitutional error is to be disregarded unless the error affects a
substantial right.  Tex. R. App. P. 44.2(b).  Consequently, A[a]
criminal conviction should not be overturned for a non-constitutional error if
the appellate court, after examining the record as a whole, has fair assurance
that the error did not influence the jury, or had but a slight effect.@ Reese v. State, 33
S.W.3d 238, 243 (Tex. Crim. App. 2000) (citing Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim.
App. 1998)).  

In assessing the likelihood that the jury=s decision was adversely affected by the error, the
appellate court should consider everything in the record, including any
testimony or physical evidence admitted for the jury=s consideration, the nature of the evidence supporting the
verdict, the character of the alleged error, and how it might be considered in
connection with other evidence in the case. 
Motilla v State,
78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  The reviewing court may also consider the
jury instructions, the State=s theory and any defensive theories, closing arguments, and
even voir dire, if applicable.  Id.  Whether the State emphasized the error,
whether the erroneously admitted evidence was cumulative, and whether it was
elicited from an expert are additional factors for consideration. Id.
at 356; Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).








In
the case at hand, the arresting officer testified that he had been certified
both for horizontal and vertical gaze nystagmus
tests.  The officer also testified that
the vertical nystagmus would indicate either a high
concentration of alcohol Aand/or
the introduction of a narcotic@
into the blood system.  Compare with Quinney, 99 S.W.3d at 859 (arresting officer
testified that VGN test would indicate narcotic use).[6]  The State then introduced a rock of crack
cocaine found in a search of Appellant=s
car after his arrest.  The arresting
officer described the search and testified that a second officer conducted a
field drug test on the suspected narcotic. 
A third officer testified about transporting the narcotic to the DPS
lab.  The DPS lab technician testified
about testing the narcotic and identified the object as cocaine.  The transcript of the trial, exclusive of
opening and closing arguments, consists of over one hundred and eighty  pages. Seventy of those pages relate to the
VGN tests and the cocaine, including the attorneys=
discussions of  the admissibility of the
VGN test, testimony from the State=s
witnesses regarding the efficacy of the VGN test and the VGN test=s relation to detecting narcotic usage,
and the search for or the testing of the narcotic.  The State, in its closing argument, stated
that the VGN test indicated either an excess of alcohol or the introduction of
illegal narcotics in the body, and that Appellant had drugs under the seat of
his car.  Thus, throughout the trial, the
State interlaced the efficacy of the VGN test and the crack cocaine found in
the car.  

Had
the State offered evidence which, to the satisfaction of the trial court,
established the admissibility of the VGN test, this court would afford the
proper deference to the trial court=s
ruling.  However, where almost forty
percent of the entire trial is devoted either to the novel, but unproven,
scientific test or the admission of the cocaine by which the State sought to
buttress the VGN=s
unproven results, we are unable to state with confidence that the jury was able
to render its decision based on the properly admitted testimony.  In sum, after reviewing the record as a
whole, we are unable to say with fair assurance that the admission of the
testimony regarding the VGN test did not influence the jury or had but a slight
effect.  Accordingly, we sustain
Appellant=s third
issue.

 

Conclusion

The
trial court abused its discretion in admitting testimony regarding the VGN test
without conducting a Daubert/Kelly
hearing to establish the reliability of the test. Furthermore, based upon our
review of the record as a whole, we conclude that the error was not
harmless.  Accordingly, the judgment of
the trial court is reversed, and the cause is remanded
for a new trial.  Because Appellant=s third issue is dispositive,
we need not address his remaining issues. 
Tex. R. App. P. 47.1.

 








    SAM GRIFFITH   

   Justice

 

 

 

Opinion delivered April 30, 2004.

Panel
consisted of Worthen, C. J., and Griffith, J.

DeVasto, J., not participating 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

                                                                     (PUBLISH)











[1] ANystagmus is defined as an >involuntary
rapid oscillation of the eyeballs in a horizontal, vertical, or rotary
direction.=@ Emerson v. State, 880 S.W.2d 759, 765
(Tex.  Crim.
App. 1994) (citing R. Berkow, ed., The Merck
Manual of Diagnosis and Therapy 1429 (1992)).





[2] Daubert
v. Merrell Dow Pharms., Inc., 509 U.S. 579,
113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

 





[3] Rule 702 provides that

[[i]f scientific, technical, or other specialized knowledge
will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the
form of an opinion or otherwise.

 

Tex. R. Evid. 702.





[4]
In Emerson, the court of criminal
appeals stated the following:

 

We are unable to conclude, however, that the HGN
technique is a sufficiently reliable indicator of precise BAC [blood
alcohol content].  Given the results of
NHTSA=s [National Highway Traffic Safety Administration] lab
experiment, resulting in an average margin of error of .03%, and the dearth of
other published writings on the accuracy of the NHTSA formula and technique, we
cannot take judicial notice of the reliability of the HGN technique within the
context of determining precise BAC based on the angle of onset of nystagmus. . . . A witness may not use HGN evidence to
quantify the defendant=s BAC.  We have
already concluded that we are unable to take judicial notice of the reliability
of the formula and technique advocated by NHTSA to determine BAC based on angle
of onset of nystagmus.  NHTSA=s own
study indicates a margin of error of .03% when its formula is used to determine
BAC level based on the angle of onset. 
That margin is too high to allow estimations of a defendant=s BAC based on the angle of onset to be admissible.

 

Emerson,
880 S.W.2d at 769 (emphasis in original).





[5] Since March 1, 1998, the Texas Supreme Court and the
Texas Court of Criminal Appeals have jointly promulgated the ATexas Rules of Evidence.@  The present Texas Rule of Evidence 702 is
identical to Texas Rule of Criminal Evidence 702 cited in Emerson.

 





[6]
In Quinney,
unlike the present case, evidence of narcotics was not admitted to buttress the
State=s argument that the VGN test detected a loss of
faculties due to the ingestion of narcotics.