

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00267-CR

SARAH JEAN CLEMENT                                    APPELLANT

V.

THE STATE OF TEXAS                                         STATE

----------

FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY
TRIAL COURT NO. 1255151

----------

## DISSENTING OPINION

----------

At first blush I agreed with the knowledgeable majority regarding the degree to which the improper statements of Officer McCoy and the prosecutor harmed Appellant. But after closely examining the videos and record, the conclusion seems, to me, inescapable that the weaknesses of other elements of the State's case substantially increase the impact of the improper statements. The State's own case impeached much of its evidence and rendered much of its

other evidence suspect. After many hours of closely examining the record, I can only conclude that the visiting trial judge reversibly erred by abandoning her gatekeeping role and allowing the prosecutor and Officer McCoy to make scientific statements in front of the jury over Appellant's objection regarding the presence or absence of resting nystagmus in her eyes at the time of the offense and at trial, with no evidence of their competence or the competence of their theories, and that the trial court reversibly erred by denying Appellant's related motion for new trial. The harm from these errors was exacerbated by the magistrate's denial of a continuance Appellant sought to address untimely disclosed *Brady*[1] information and the visiting trial judge's denying Appellant any opportunity to proffer expert testimony to contradict the surprise pseudo-scientific expert statements of the prosecutor and Officer McCoy to the jury. Because my colleagues do not agree with me about the extent of the error or join me in concluding that the error is harmful, I must respectfully dissent.

**Summary of Facts**

Fort Worth police officer Dale McCoy did not make the stop but arrived soon after Appellant was pulled over, and he testified at trial. Officer McCoy stated that Appellant smelled of alcohol and that he decided to conduct field sobriety tests. He testified that Appellant passed the one-leg stand test but failed the HGN test and the walk-and-turn test; she was then arrested for DWI. On

---

[1]*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).

direct examination, Officer McCoy testified that Appellant's walk was "swayed, staggered, and unsteady." But on cross-examination, he agreed that Appellant had had no problems with balance when getting out of the car or during the HGN test. Officer McCoy acknowledged that before performing the HGN test, he did not ask Appellant whether she had had any recent head injuries. He also acknowledged that at the police station after her arrest, Appellant stated that she had recently had some head injuries. He further testified that although he checked the box for "yes" on his offense report in answering whether Appellant had resting nystagmus, that was a mistake, and he meant to put "no."

The video of Appellant performing the field sobriety tests shows no unsteadiness, no swaying, and no staggering. Indeed, she performed the tests well. It was impossible, however, to see how she performed on the HGN test because any jerking in the eye is quite subtle and difficult to see, especially when not standing near a person being tested. The only evidence of nystagmus is Officer McCoy's testimony.

He further testified that, although his team had a portable breath test device (PDT) to test for the presence of alcohol in a suspect at the scene of the stop, he chose not to use it. Nor did he seek a warrant for a blood test but instead relied on the observations of Cohen. Officer McCoy testified that when he arrived, another officer on the scene told him that Appellant's pants had been completely off when he first saw her. Officer McCoy testified that Appellant's pants were on but unzipped.

3

In the State's redirect examination at trial, the prosecutor asked Officer McCoy to step down and check Appellant for resting nystagmus. Appellant's attorney objected, "I'm not tendering [Appellant] as a witness, Your Honor," and pointed out that "if she had resting nystagmus in 2011, that doesn't necessarily mean she has it now." The prosecutor responded, "If she had resting nystagmus three years ago, she absolutely would have it today. It's not something that just goes away." The prosecutor further argued that "this is non-testimonial in nature, and he's able to, for demonstrative purposes, check if she has resting nystagmus." Appellant's attorney countered that neither the prosecutor nor the police officer was "qualified" to "talk about when someone has resting nystagmus, when it goes away, what causes it, [or] how long it lasts." The trial court overruled the objections and allowed Officer McCoy to check Appellant for resting nystagmus. Officer McCoy then testified that "[r]ight now she would have resting nystagmus. I don't see any resting nystagmus."

Appellant later moved for a mistrial on the basis of this in-trial resting nystagmus test and argued that performing the test in open court was a violation of her right to remain silent and to not present evidence against herself. She also requested that she be granted a continuance if the mistrial were denied so that she could get her own expert "and come back and revisit this" issue. The trial court denied the motion for mistrial as well as the request for a continuance.

I agree with the majority that the purported resting nystagmus testing was not testimonial. The Texas Court of Criminal Appeals has held that Article I,

4

Section 10 of the Texas Constitution is somehow limited to the scope of the Fifth Amendment to the Constitution of the United States, despite the clearly distinct language of the Texas Constitution guaranteeing that a person accused of a criminal offense may not be compelled to provide evidence against himself or herself.[2]  Further, this court has held that HGN evidence is nontestimonial in a suppression case.[3]

**Error**

Respectfully, this court's determination that being compelled to perform an in-court nystagmus test does not violate the Fifth Amendment because it is not testimonial does not vest the testifying officer with expertise either to perform the test or to interpret the results without the State's laying sufficient predicate to show the officer's expertise so that the trial court may perform its gatekeeping mandate, nor does it authorize the attorney eliciting the officer's testimony to offer scientific opinion before the jury as an expert.  The record does not reflect that either the prosecutor or Officer McCoy had been designated as an expert regarding resting nystagmus.[4]  I therefore disagree with the majority that the

---

[2]*Miffleton v. State*, 777 S.W.2d 76, 80 (Tex. Crim. App. 1989).

[3]*Campbell v. State*, 325 S.W.3d 223, 233 (Tex. App.—Fort Worth 2010, no pet.).

[4]*See Quinney v. State*, 99 S.W.3d 853, 859 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (stating that for vertical nystagmus "and resting nystagmus evidence to be admissible, the proponent must present evidence of . . . research of the scientific theory underlying those tests," similar to that of HGN).

officer's testimony regarding the results of the in-trial resting nystagmus test was admissible. Nor do I understand the reluctance of the conscientious majority to provide necessary guidance to the bench and bar by explaining why all the statements were inadmissible rather than merely assuming error, and that in part.

In her second issue, Appellant argues that the trial court reversibly erred by overruling her objection to the prosecutor's "making scientific statements in front of the jury" and by "overruling defense counsel's objection to the relevance of improperly admitted scientific testimony." Within this issue, she specifically complains about the admission of Officer McCoy's resting nystagmus testimony, "Right now she would have resting nystagmus. I don't see any resting nystagmus."

As our sister court in Houston has explained,

Application of the *Kelly* factors is germane to evaluating whether an expert's opinion will withstand scrutiny outside of the courtroom. Expert testimony that is not grounded in methods and procedures acknowledged by scientists in the particular field of study amount to no more than subjective belief or unsupported speculation. Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under Texas Rule of Evidence 702.

The proponent of expert testimony based on a scientific theory must show by clear and convincing evidence that it is: (1) reliable; and (2) relevant to assist the trier of fact in its fact-finding duty. Consequently, the State, as the proponent of the evidence, had the burden of producing evidence of the underlying scientific theory behind the expert testimony. . . . For VGN [vertical gaze nystagmus] and resting nystagmus evidence to be admissible, the proponent must present evidence of similar research of the scientific theory

6

underlying those tests. . . . Without scientific proof behind this theory, we cannot find the evidence admissible.[5]

Thus, the proponent of scientific evidence bears the burden of proving reliability by satisfying the criteria set forth in *Kelly*.[6] The trial court must conduct a hearing to determine whether the proponent has established those criteria.[7] Neither the prosecutor nor Officer McCoy was qualified as an expert in testing and evaluation of resting nystagmus. Nor was the scientific theory they propounded proved under the *Kelly* standard.[8]

Officer McCoy's testimony that he had mistakenly indicated in his report that Appellant had resting nystagmus is significant because, according to him, a person with resting nystagmus cannot be tested accurately for HGN. Indeed, Officer McCoy testified that had Appellant had resting nystagmus at the time of the DWI arrest, he would not have performed the field sobriety tests. Yet, he testified that he did perform the HGN test before the DWI arrest and that Appellant failed the test, showing signs of HGN that indicated intoxication.

---

[5]*Id.* at 858–59.

[6]*Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

[7]*Id.* at 572–73 & n.10 ("Rule 104(a) requires that the admissibility of expert testimony be determined by the trial court," and "[u]nder Rule 104(a) and (c) and Rule 702, all three [*Kelly*] criteria must be proven to the trial court, outside the presence of the jury, before the evidence may be admitted.").

[8]*See id.*

7

In her objection, Appellant also challenged the relevance of the in-court test, stating that whether she showed signs of resting nystagmus at trial was no indication of whether she had shown resting nystagmus three years before when she was arrested. The trial court overruled the objection. Officer McCoy checked Appellant for resting nystagmus and spontaneously testified, apparently in response to the attorneys' discussion, "Right now she would have resting nystagmus. I don't see any resting nystagmus."

Even if we assume that requiring Appellant to submit to a resting nystagmus field sobriety test in front of the jury was not in itself error, the record does not reflect that the jury was in any position to see the subtle movements of Appellant's eyes or the absence of such movement. The trial court allowed Officer McCoy to tell the jury what Appellant's physiological response allegedly was and further allowed him to explain to the jury the meaning of the response. It is well established that "[f]or testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test."[9] The same is true for a witness testifying about a defendant's performance on a resting nystagmus test.[10]

The State made no effort to lay the necessary *Kelly* predicate either for Officer McCoy's testimony regarding the transience or permanence of resting

---

[9]*Salazar v. State*, 298 S.W.3d 273, 279 (Tex. App.—Fort Worth 2009, pet. ref'd).

[10]*See id.*; *see also Quinney,* 99 S.W.3d at 859.

nystagmus or for the prosecutor's opinion. The visiting trial judge abused her discretion by abandoning her gatekeeping obligations and admitting the purported scientific evidence sponsored by the State with no showing of its validity or reliability, in contravention of *Kelly*.[11] Likewise, the trial court abused its discretion by denying Appellant's motion for new trial based on the admission of the same purported scientific evidence.

**Harm**

After Officer McCoy's examination ended and the visiting trial judge called a short recess, Appellant requested a hearing outside the presence of the jury, where she again complained about the test:

> I objected to my client being tendered at the request of counsel for the prosecution to have the test for resting nystagmus performed on her in open court. [The] Court of Criminal Appeals has said in *Emerson* that it is, in fact, a scientific test. This is how this officer can even talk about it in the first place. It has to be done correctly. . . . Additionally, since it is a scientific test—Well, I would ask for a mistrial based on those grounds.
>
> Secondly, since it is a scientific test, if the Court denies a mistrial, then I would like a continuance to get my own expert and come back and revisit this. I don't think it's—for rebuttal testimony.
>
> Counsel for the prosecution said something that, well, once there's resting nystagmus, there's always resting nystagmus. She said that in the presence of the jury. Well, that's just not true. I mean, if you have a concussion, you're gonna have resting nystagmus. Three years later, if you don't still have a concussion, you may not still have resting nystagmus. I would ask that the Court grant the mistrial on those grounds or give me time to get my expert to rebut.

---

[11]*See* 824 S.W.2d at 572–73 & n.10.

9

After the State responded, Appellant continued,

> Judge, my argument is that because of *Emerson*, it is a scientifically valid test, and it can come in through the officer. My argument is that I want my own expert to testify. I wanna know if he did the test for resting nystagmus correctly. I wanna have it videotaped, if I need to, and then submit it to my expert, or at least have time to present an expert for rebuttal testimony.

After the State again responded, Appellant noted that "there [was] no way [she] could have known that the officer was going to say that the resting nystagmus he put in his own report was a mistake until he took the stand and testified as such." The trial court denied both Appellant's motion for mistrial and her motion for continuance for time to secure an expert to meet and rebut the surprise nystagmus testimony and statements.[12]

The ability to present expert testimony has long been considered an important element of presenting a defense in a criminal case, but it has also been recognized as an important element of assisting the jury to interpret and judge the validity of the prosecution's evidence. As the Supreme Court of the United States has explained in considering whether there is an obligation to provide an indigent defendant with funds to pay an expert when the defendant's mental condition at the time of the offense is at issue,

> The private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely

---

[12]*See Ake v. Oklahoma*, 470 U.S. 68, 74–77, 105 S. Ct. 1087, 1091–93 (1985) (recognizing that indigent defendant has constitutional right to court-appointed expert in some cases).

10

compelling. Indeed, the host of safeguards fashioned by this Court over the years to diminish the risk of erroneous conviction stands as a testament to that concern. The interest of the individual in the outcome of the State's effort to overcome the presumption of innocence is obvious and weighs heavily in our analysis.

We consider, next, the interest of the State. . . . The State's interest in prevailing at trial—unlike that of a private litigant—is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases. Thus, also unlike a private litigant, a State may not legitimately assert an interest in maintenance of a strategic advantage over the defense, if the result of that advantage is to cast a pall on the accuracy of the verdict obtained. We therefore conclude that the governmental interest in denying Ake the assistance of a psychiatrist is not substantial, in light of the compelling interest of both the State and the individual in accurate dispositions.

Last, we inquire into the probable value of the psychiatric assistance sought, and the risk of error in the proceeding if such assistance is not offered. . . . [I]n subsection (e) of the Criminal Justice Act, Congress has provided that indigent defendants shall receive the assistance of all experts "necessary for an adequate defense." Numerous state statutes guarantee reimbursement for expert services under a like standard.[13]

The right to assistance of an expert is not exclusive to the indigent defendant; even a defendant in a criminal case who has not claimed indigent status, like Appellant, is entitled to expert assistance in an appropriate case.[14]

---

[13]*Id. at* 78–80, 105 S. Ct. at 1093–94 (citations and most internal quotation marks omitted).

[14]*See Ex parte Overton*, 444 S.W.3d 632, 640 (Tex. Crim. App. 2014) (without regard to Overton's financial status, holding counsel ineffective for not presenting specific expert's testimony or requesting continuance to allow said expert to attend trial).

11

The State argues that Appellant invited the prosecutor's improper scientific conclusion by lodging her objection to Officer McCoy's testimony. I cannot understand how Appellant's objection provided the prosecutor with the experience and expertise to qualify as an expert. In addition to erroneously admitting the purported scientific evidence of Officer McCoy and allowing the prosecutor's unsworn testimony regarding the permanence and transience of resting nystagmus, the visiting trial judge gave Appellant no opportunity for cross-examination of the prosecutor's unsworn testimony and no opportunity to secure the assistance of a defense expert to meet and rebut either that unsworn testimony or Officer McCoy's purported scientific evidence.

Further, the evidence at trial conflicted on the issue of intoxication, as shown by this chart:

| | |
|---|---|
| | Officer McCoy saw no evidence of any damage to Appellant's pickup caused by hitting the guardrail or embankment, and there was no suggestion that any other officer saw or reported any damage. No officer completed an accident report that would have been required if the pickup was damaged. Officer Bolling was the officer who spoke with Cohen at the scene and who inspected the vehicle for damage. The jury did not hear the evidence that he found no damage. |
| Cohen called 9-1-1 and described the pickup later connected to Appellant as hitting the highway embankment or guardrail, causing sparks to fly. | |

12

Because the police did not see Appellant commit any offense and did not secure a warrant, they justified her detention by claiming her pickup had a defective taillight.

Cohen, who followed Appellant for several miles and reported his observations of her driving, saw no defective lights.

Officer McCoy testified that Appellant smelled of alcohol at the scene.

Officer McCoy testified that, although his team had a PDT at the scene, he chose not to use it. Nor did he seek a warrant for a blood test but instead relied on the observations of Cohen.

Officer McCoy testified that Appellant had passed the one-leg stand test but failed the HGN test and the walk-and-turn test. On direct examination, he testified that Appellant's walk had been "swayed, staggered, and unsteady."

On cross-examination, Officer McCoy agreed that Appellant had had no problems with balance when getting out of the car or during the HGN test.

The video of Appellant on the scene of her arrest and during the field sobriety tests shows no unsteadiness, swaying, or staggering.

Officer McCoy testified Appellant showed "clues" of intoxication when he performed the HGN test at the scene of the arrest.

The only evidence of Appellant's performance on the HGN test was Officer McCoy's interpretation and opinion.

At the scene, Officer McCoy forgot to ask Appellant whether she had had any head injuries. At the police station, Appellant stated that she had recently had some head injuries.

13



Officer McCoy noted on his report that Appellant exhibited resting nystagmus at the scene of the arrest.

Officer McCoy admitted at trial that HGN testing for a person with resting nystagmus was invalid.

Officer McCoy was permitted to testify as an expert to impeach his own expert opinion at the arrest scene and also testified that he did not lay the proper predicate before conducting nystagmus testing.

Officer Martinez, the intoxilizer operator, testified that Appellant refused to provide a sufficient breath sample for the intoxilizer test and that she was obviously intoxicated because she raised her arms more than six inches from her waist for a good two or three seconds and put her foot down.

The video does not reveal obvious intoxication.

Appellant filed a pretrial request for a witness list and a list of experts the State intended to rely on. After trial but before Appellant filed her motion for new trial, Officer Bolling was indicted for manslaughter. In the hearing on her motion for new trial, Appellant argued that because Officer Bolling was the first officer on the scene, she had expected him to testify to explain that he had not completed an accident report because there was no damage to her vehicle. Evidence of the absence of damage from the person who actually examined the vehicle at the scene could have impacted not only the intoxication evidence but also the evidence of the justification for the stop—the alleged defective taillight. Defense counsel stated to the judge in the hearing on the motion for new trial,

14

Well, since he's been indicted for manslaughter, I highly doubt that they [the State] would sponsor him now. But I would have subpoenaed him not to discuss his potential criminal case but to testify about the fact that he didn't complete an accident report because there was no damage to the vehicle.

Like this court, the *Overton* court was also presented with scientific evidence[15] and *Brady* issues[16] that substantially impacted the issue of guilt. As Judge Cochran explained in her concurring opinion, defense counsel may be constitutionally ineffective for not permitting the jury to hear expert testimony contradicting the State's experts' theories of criminal liability "and [to] make its own assessment of credibility and scientific reliability."[17] Further, as the Texas Court of Criminal Appeals has noted in the double jeopardy/mistrial context,

> If the jury's guilty verdict is significantly influenced by a prosecutor asking legally improper and prejudicial questions, offering inadmissible evidence, or making improper remarks to the jury, that verdict will be reversed on appeal regardless of whether the prosecutor intentionally or recklessly struck a foul blow. As one court put it, "it hurts the defendant just as much to have prejudicial blasts come from the trumpet of the angel Gabriel."[18]

Under the specific facts of this case, I believe we are compelled to hold that the trial court's error in admitting Officer McCoy's testimony was harmful and

---

[15]*Id.*

[16]*Id.* at 652 (Cochran, J., concurring).

[17]*Id.*

[18]*Ex parte Peterson*, 117 S.W.3d 804, 817 n.57 (Tex. Crim. App. 2003) (most internal quotation marks and citation omitted), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007).

therefore requires reversal under rule 44.2(b).[19]  Because the erroneous admission of Officer McCoy's testimony about the permanence and transience of resting nystagmus was harmful, I believe we should likewise sustain Appellant's fourth issue, which complains of the denial of her motion for new trial.

**Conclusion**

Because the majority does not sustain Appellant's second or fourth issue, reverse the trial court's judgment, and remand this case for a new trial, I must respectfully dissent.


/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE


PUBLISH

DELIVERED:  July 14, 2016

---

[19]*See* Tex. R. App. P. 44.2(b).

16