# NOS. 12-22-00053-CR
## 12-22-00054-CR
## 12-22-00055-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BRANDON DEMARCUS ROBERTS,* *APPELLANT* | § | *APPEALS FROM THE 123RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SHELBY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Brandon Demarcus Roberts appeals his convictions for sexual assault, tampering with physical evidence, and burglary of a habitation. In six issues, Appellant contends the appellate record is incomplete and challenges the legal sufficiency of the evidence supporting his conviction for tampering with evidence, the denials of his motion to suppress and motion for continuance, the admission of an officer's testimony regarding the victim's truthfulness, and the admission of testimony from a sexual assault nurse examiner regarding that victim's account of the assault. We affirm.

## BACKGROUND

At his arraignment, Appellant invoked his right to represent himself. Appellant filed a pro se motion to suppress, in which he sought to suppress his warrantless arrest and statement. Appellant argued his motion to suppress pro se at the final pretrial hearing, at which the State called two witnesses to testify. Jacob Martinez testified that on May 3, 2021, the victim, A.E., left him a message informing him that someone broke into her home, so he went to her residence. After arriving at her residence and attempting to enter, Martinez saw Appellant open the door of

A.E.'s residence, walk across the street to another residence, and enter that house. While Martinez was on the phone with 911, he noticed that Appellant's arm was bleeding.

Detective Ricky King of the Center Police Department testified that he responded to the call regarding the home invasion, and both Martinez and A.E. told him that Appellant, who was the perpetrator, left the victim's residence and returned to his residence. King explained that A.E. was visibly shaking, crying, her clothing was torn, and "there was blood all over her shirt." A.E. told King that she stabbed Appellant, and King testified that he was concerned about Appellant's safety. Upon approaching Appellant's residence, King saw blood on the door frame and door handle. When other officers arrived, they knocked on Appellant's door, but found the door to be locked. King instructed officers that exigent circumstances existed because he did not know the severity of Appellant's stab wound, and officers needed to "locate him to see if he had bled out." King agreed that relevant evidence would have been on Appellant's person. The trial judge overruled Appellant's motion to suppress.

Appellant continued to represent himself until the morning of trial, when he asked the trial court to appoint his standby counsel to represent him.[1] The trial court appointed Appellant's standby counsel to represent Appellant at trial, and counsel immediately moved for a continuance. Counsel pointed out that he had not been working on the case because after his initial appointment, Appellant invoked his right to represent himself. Counsel stated that he did not have the opportunity to confer with Appellant about statements that were given, view pictures of the scene, obtain witness statements, confer with the District Attorney's office, file motions, review judgments that the State would use to enhance Appellant's punishment, or attempt to contact potential witnesses for the defense. Counsel then stated:

> I would ask the Court to give me the opportunity to . . . represent Mr. Roberts in accordance with the Sixth Amendment, and to do it effectively with regard to being able to investigate these issues that are now before the Court that are very serious issues. This is a first-degree case, as well, Your Honor. And I would ask the Court to continue this for at least a month so I could have the opportunity to investigate these matters and properly prepare for the selection and for the trial in this case, Your Honor.

In response, the State asserted that defense counsel possessed all the discovery and that Appellant "waived any argument he might have about ineffective assistance." The trial judge appointed

---

[1] Appellant requested appointed counsel after the venire panel was sworn but before voir dire began.

2

counsel to represent Appellant, and counsel orally moved to withdraw, stating, "I'm not prepared for this case." The trial court denied the motion, and the case proceeded to jury selection and trial.

A.E. testified that Appellant lived across the street from her, but she did not know him. Around 4:00 a.m. on the date in question, A.E. called the police after hearing someone knocking on her door, and she looked outside and saw Appellant. The police came to A.E.'s home, but they did not find anyone. Later that morning, while A.E. was getting ready for work, she heard another knock on her door, so she grabbed a knife. A.E. unlocked her front door and when she saw Appellant, she tried to close the door, but Appellant pushed against the door. A.E. stabbed Appellant, but he continued to push the door and eventually overwhelmed her, grabbed her throat, and choked her. A.E. testified that Appellant penetrated her vagina. During the assault, A.E. found her phone on the floor and sent Martinez a text message, in which she told him to call the police. A.E. explained that after the assault, Appellant forced her to shower to remove the blood and semen from her body, and Appellant got into the shower with her and made her wash his body. According to A.E., Appellant was "bleeding everywhere" from the stab wounds. Martinez arrived and attempted to enter the house. Martinez testified that while he was on the phone with 911, he saw Appellant leave A.E.'s home and return to his residence. The police arrived a short time later.

Detective King responded to the home invasion call. King testified that when he encountered A.E., "it was apparent . . . that she had been in a physical altercation. Her shirt was torn, you could see blood on her shirt, she was crying, she was shaking. She was a mess." Both A.E. and Martinez told King that they saw Appellant walk across the street and enter a residence. King instructed his officers that entering the residence was permissible due to exigent circumstances, and officers forced their way into the home after they knocked and announced their presence. Officers located Appellant inside the house, and King observed that Appellant had two bleeding stab wounds.

Officer Angela Neal of the Center Police Department went to the scene with King. Upon encountering A.E. and Martinez, Neal learned that A.E. stabbed Appellant, and she observed blood on A.E. When the State asked Neal whether she is trained to make a determination of a witness's credibility when speaking with the witness, Neal responded affirmatively and indicated that she relies mostly upon body language to do so. When the State asked Neal about A.E.'s body language, defense counsel objected, "that's going into the purview of the jury. They're the ones that make the determination as to whether somebody is truthful or not. And she's trying to bolster

3

[A.E.]'s testimony with this witness. So I'll object to that." The State responded, "I have asked her what her observations were and what her training is in her field[,]" and the trial judge stated, "I'll allow it." According to Neal, A.E. was crying and upset, and "[m]ost people, when they are that upset, don't tend to make stuff up." Neal explained that she was concerned that Appellant might be injured, so she approached his home with other officers. Neal observed blood on the doorknob, and Appellant did not answer when officers knocked and announced their presence.

Sexual assault nurse examiner (SANE) and medical advocate Kim Riddle examined A.E. and took swabs and samples from her body for evidence. Riddle testified on voir dire examination that as a nurse, she does not provide a medical diagnosis, but "as far as her nursing diagnosis, . . . [A.E.] had a potential for infection, she had potential for rape trauma syndrome[.]" Riddle explained that a SANE typically instructs patients to follow up with a primary care physician. Defense counsel objected that the victim's statement to Riddle was not a statement for medical purposes, but was instead "a statement for law enforcement collection[,]" and the prosecutor responded, "SANE exam nurses can testify just like an emergency room nurse can testify to the examination and the conversations that they had with those people during the course of that examination." The prosecutor also stated that the State designated Riddle as an expert and provided her report.

The trial judge overruled defense counsel's objection, and Riddle then testified that during the examination, A.E. told her that when Appellant knocked on her door for the second time, she grabbed a knife because she was afraid, and that Appellant overwhelmed her at the door and choked her, and she stabbed his arm. A.E. also told Riddle that Appellant overpowered her, got her onto the floor, lifted her legs, and penetrated her vagina with his penis. In addition, A.E. told Riddle that Appellant instructed her to wash herself "[a]nd then he made her clean him off as well." Riddle found dried blood on A.E., as well as a mark where A.E. said Appellant punched her, but A.E. did not have any cuts or injuries that would have caused bleeding. A.E. also told Riddle that Appellant seemed to be "on something" because after the assault, he "walked out like nothing had happened at all." Riddle prepared a report regarding her examination of A.E., and the trial judge admitted the report into evidence over defense counsel's objection that the report was hearsay and made "for law enforcement purposes."

Haleigh Agot, a forensic scientist with the Texas Department of Public Safety Crime Laboratory, tested the samples from the sexual assault kit, as well as buccal swabs from A.E. and

4

Appellant. Agot testified that the samples taken from A.E.'s vulva, vagina, and anus were all positive for the presence of semen. Madison Lantzsch of the Texas Department of Public Safety Crime Laboratory testified that DNA analysis of samples from A.E.'s fingernails and underwear indicated that some of the DNA found in those samples came from Appellant. In addition, Lantzsch explained that Appellant was "a possible contributor" to the samples obtained from A.E.'s vulva and anus.

Appellant testified that he and A.E. engaged in sexual intercourse four or five times before the date in question. Appellant denied pushing the door to A.E.'s home and denied assaulting her. According to Appellant, he and A.E. engaged in consensual sexual intercourse on the date in question. Appellant stated that A.E. stabbed him because they previously argued, and he explained that he and A.E. showered because he was bleeding.

The jury assessed punishment at twenty years of confinement in the tampering with physical evidence case, confinement for life in the sexual assault case, and confinement for life in the burglary of a habitation case. The trial court ordered that the sentences run concurrently. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In issue four, Appellant challenges the sufficiency of the evidence supporting his conviction for tampering with physical evidence. Specifically, Appellant contends there was no evidence that he possessed the requisite intent to impair the availability of evidence.[2] Because this issue, if sustained, would result in rendition of a judgment of acquittal on the tampering with evidence charge, we address it first. *See* TEX. R. APP. P. 47.1; *Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

**Standard of Review and Applicable Law**

When evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found

---

[2] Appellant does not contend that he did not know an investigation was pending when he forced the victim to shower. Even if Appellant had made such an argument, he would not prevail. *See Williams v. State*, 270 S.W.3d 140, 143 (Tex. Crim. App. 2008) (holding that a defendant need not be aware that the thing he destroyed was evidence in the investigation as it existed at the time of its destruction); *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding that "[t]o avoid redundancy from the [statute's] use of the terms 'pending' and 'in progress,' we look to a second definition of the adjective 'pending,' which is "impending, or about to take place.").

5

the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315-16, 99 S. Ct. at 2789; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.—San Antonio 1999, pet. ref'd). The jury is the ultimate authority on the credibility of witnesses and the weight to be given to their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778.

**Analysis**

The indictment alleged Appellant "did then and there, knowing that an investigation was pending or in progress, to-wit: sexual assault and burglary of a habitation, intentionally or knowingly destroy evidence, to-wit: defendant showered the victim and himself, with intent to impair its [sic] legibility or availability as evidence in the investigation or official proceeding." *See* TEX. PENAL CODE ANN. § 37.09(a)(1) (West Supp. 2022). As mentioned above, Appellant challenges the sufficiency of the evidence to show that he had the requisite intent to destroy evidence. "Three elements define the offense of tampering with physical evidence: (1) knowing that an investigation or official proceeding is pending or in progress, (2) a person alters, destroys, or conceals any . . . thing, (3) with intent to impair its . . . availability as evidence in the investigation or official proceeding." *Williams v. State*, 270 S.W.3d 140, 142 (Tex. Crim. App. 2008); *see* TEX. PENAL CODE ANN. § 37.09(a)(1). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a) (West

6

2021); *see Barron v. State*, 629 S.W.3d 557, 563 (Tex. App.—Eastland 2021, pet. ref'd) (applying Section 6.03(a) of the Texas Penal Code to offense of tampering with physical evidence).

Intent and concealment are two distinct elements of the offense of tampering with physical evidence. *Delagarza v. State*, 635 S.W.3d 716, 724 (Tex. App.—Corpus Christi 2021, pet. ref'd). Proof of a culpable mental state generally depends upon circumstantial evidence, and intent may be inferred from any facts that tend to prove its existence, such as the defendant's acts, words, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Martin v. State*, 246 S.W.3d 246, 263 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Delagarza*, 635 S.W.3d at 724. Juries may make reasonable inferences from the evidence presented at trial, and circumstantial evidence is as probative as direct evidence in establishing guilt. *Hooper*, 214 S.W.3d at 14-15. We must give deference to the jury's duty to resolve credibility issues and to weigh the evidence, including any reasonable inferences from that evidence. *Id*. at 13.

The jury heard evidence that Appellant forced his way into A.E.'s home and A.E. stabbed him. The jury also heard evidence that Appellant sexually assaulted A.E., made her shower afterward, and made her clean his body. Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could infer Appellant's intent to tamper with the evidence. *See Brooks*, 323 S.W.3d at 899 n. 13; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Hart*, 89 S.W.3d at 64. Accordingly, we overrule issue four.

## APPELLATE RECORD

In issue one, Appellant argues that the appellate record is incomplete. Specifically, Appellant asserts that the clerk's record does not contain pretrial motions on which the trial court ruled or the trial court's orders on the motions. Appellant also points out that amended indictments and notices required to support the State's enhancement allegations are not in the record, and Appellant states that he "intends to file a letter requesting the Shelby County District Clerk to prepare supplemental clerk's records which include the omitted items."

Appellant correctly states that the Texas Rules of Appellate Procedure require the clerk's record to include the indictment and defense motions that were presented to the court and overruled. *See* TEX. R. APP. P. 34.5(a). However, Appellant does not argue in his brief that the absence of the identified items from the record constituted reversible error. *See id*. R. 44.2(b). Appellant does not identify what additional issues he would present if the record were

7

supplemented.  Appellant's brief challenges the denials of his motion to suppress and motion for continuance,[3] and Appellant does not contend that the absence of those motions (and the orders thereon) or any other motions from the clerk's record affected his substantial rights or prevented him from properly presenting his case to this Court.[4]  *See id*. R. 44.4(a)(1) (providing that a court of appeals must not affirm or reverse a judgment or dismiss an appeal if the trial court's erroneous failure or refusal to act prevents proper presentation of the case to the court of appeals); 44.2(b) (providing that non-constitutional errors, defects, irregularities, or variances that do not affect substantial rights must be disregarded).  Accordingly, we overrule issue one.

## DENIAL OF MOTION TO SUPPRESS

In issue two, Appellant contends the trial court erred by denying his motion to suppress. Specifically, Appellant argues that officers' forced entry into his home and his warrantless arrest "violated the Fourth Amendment and Texas law."

**Standard of Review and Applicable Law**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review.  *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010).  We give almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that rely on credibility determinations if they are supported by the record.  *Kerwick*, 393 S.W.3d at 273; *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008).  However, we review de novo questions of law and mixed questions of law and fact that do not rely on credibility determinations.  *Kerwick*, 393 S.W.3d at 273; *Neal*, 256 S.W.3d at 281.  At a hearing on the motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses.  *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).  A trial court may choose to believe or to disbelieve all or any part of a witness's testimony.  *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  We

---

[3] The record does not indicate that Appellant filed a written motion for continuance, and Appellant does not assert that he did so.

[4] Unlike the situation presented in *Woods v. State*, No. 12-19-00350-CR, 2020 WL 6380337, at *1 (Tex. App.—Tyler Oct. 30, 2020, *rev'd*, No. PD-1085-20, 2021 WL 476105 (Tex. Crim. App. 2021), in this case the record does not reflect that Appellant requested supplementation of the clerk's record, and with the exception of his assertion in issue one that the appellate record is incomplete, Appellant's issues do not assert that the fact that the items are missing constitutes reversible error.

must uphold the trial court's ruling on a motion to suppress if the ruling is supported by the record and is correct under any theory of law applicable to the case. *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

The Fourth Amendment to the United States Constitution guarantees people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Therefore, a warrantless search of a residence is presumptively unreasonable. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). When a defendant attempts to suppress evidence based on a warrantless search or seizure, the State must show both (1) that probable cause existed and (2) that exigent circumstances required immediate entry. *Igboji v. State*, 666 S.W.3d 607, 613-14 (Tex. Crim. App. 2023). Probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a reasonably prudent person to believe that evidence of a crime will be found. *Id.* at 613; *Estrada v. State*, 154 S.W.3d 604, 609 (Tex. Crim. App. 2005). If probable cause exists, exigent circumstances may require immediate, warrantless entry by police officers who are "providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance[.]" *Gutierrez*, 221 S.W.3d at 685.

**Analysis**

As discussed above, at the hearing on Appellant's motion to suppress, the trial court heard Martinez testify that when he arrived at A.E.'s residence, he saw Appellant leave and return to his own residence across the street, and he noticed that Appellant was bleeding. The trial court also heard King testify that both Martinez and A.E. told him that they saw Appellant enter his own residence after leaving A.E.'s home, and A.E. told King that she stabbed Appellant. Upon approaching Appellant's residence, King and other responding officers saw blood on the door frame and door handle. Appellant did not answer when officers knocked.

Giving deference to the trial court's evaluation of the witnesses' credibility and demeanor, we conclude that officers had probable cause to believe that evidence of a crime would be found, and exigent circumstances existed justifying the warrantless entry into Appellant's residence because officers reasonably believed Appellant might need immediate assistance. *See Igboji*, 666 S.W.3d at 613-14; *Gutierrez*, 221 S.W.3d at 685; *Estrada*, 154 S.W.3d at 609; *Maxwell*, 73 S.W.3d at 281; *Ross*, 32 S.W.3d at 855. Therefore, the trial court did not abuse its discretion by denying Appellant's motion to suppress. Accordingly, we overrule issue two.

9

## DENIAL OF MOTION FOR CONTINUANCE

In issue three, Appellant asserts that the trial court's denial of his motion for continuance infringed his Sixth Amendment right to effective assistance of counsel.

## Standard of Review and Applicable Law

We review a trial court's denial of a motion for continuance for an abuse of discretion. *Cruz v. State*, 565 S.W.3d 379, 381 (Tex. App.—San Antonio 2018, no pet.); *see Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference to any guiding rules and principles. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). A trial court does not abuse its discretion as long as its decision is within the zone of reasonable disagreement. *Cruz*, 565 S.W.3d at 381.

"A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006). Article 29.08 of the Texas Code of Criminal Procedure provides that "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id*. art. 29.08 (West 2006). Courts "have construed these statutes to require a sworn written motion to preserve appellate review from a trial judge's denial of a motion for continuance." *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009); *accord Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (refusing to recognize a "due process exception" to requirement that motion for continuance be written and sworn).

## Analysis

In the instant case, Appellant's motion for continuance was not in writing, but was instead made orally in open court. We conclude that Appellant failed to preserve his motion for continuance and its bases for review. *See* TEX. CODE CRIM. PROC. ANN. arts. 29.03, 29.08; *Blackshear*, 385 S.W.3d at 591; *Anderson*, 301 S.W.3d at 279. Even if Appellant properly preserved this issue for appellate review, he would not prevail. To show reversible error predicated on the denial of a pretrial motion for continuance, an appellant must demonstrate both that the trial court abused its discretion by denying the motion and that the lack of a continuance harmed him. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010). The requirements to establish an abuse of discretion and prejudice apply when, as here, an appellant contends the denial of a continuance is of constitutional significance. *See id*.; *Gallo*, 239 S.W.3d at 764; *Carlile v. State*,

No. 02-19-00468-CR, 2021 WL 5506864, at *5 (Tex. App.—Fort Worth Nov.24, 2021, pet. ref'd) (mem. op., not designated for publication). To demonstrate prejudice, an appellant should show with considerable specificity how he was harmed by the lack of more preparation time. *Gonzales*, 304 S.W.3d at 842. The fact that counsel desired more time to prepare does not, standing alone, establish an abuse of discretion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996).

Appellant does not raise an issue asserting ineffective assistance of counsel, and the bare record does not demonstrate that trial counsel was ineffective. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002) (holding that appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (holding that any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness). Appellant has not demonstrated that he was prejudiced by the trial court's denial of his motion for continuance. *See Gonzales*, 304 S.W.3d at 842; *Janecka*, 937 S.W.2d at 468. Accordingly, we overrule issue three.

### TESTIMONY REGARDING VICTIM'S CREDIBILITY

In issue five, Appellant contends the trial court erred by allowing Neal to testify that she believed A.E.'s outcry was truthful.

## Standard of Review and Applicable Law

We review the trial court's admission of evidence for abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016); *Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd). If the trial court's ruling is within the zone of reasonable disagreement, we will not disturb it. *Manuel*, 357 S.W.3d at 74. A trial court's erroneous admission of evidence is generally nonconstitutional error. *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002); *Stovall v. State*, 140 S.W.3d 712, 718 (Tex. App.—Tyler 2004, no pet.). We must disregard any nonconstitutional error that does not affect an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). The erroneous admission of evidence does not affect substantial rights if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the factfinder or had but a slight effect. *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Substantial rights are affected if the alleged error had a substantial and injurious effect or influence in determining the jury's

11

verdict. TEX. R. APP. P. 44.2(b); *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008). In determining whether substantial rights were affected, we consider the following nonexclusive factors: the character of the alleged error and how it might be considered in connection with other evidence; the nature of the evidence supporting the verdict; the existence and degree of additional evidence indicating guilt; whether the State emphasized the complained-of error; the trial court's instructions; the theory of the case; and relevant voir dire. *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023).

**Analysis**

As discussed above, Neal testified that she is trained to determine witnesses' credibility, and she explained that people who are as upset as A.E. "don't tend to make stuff up." Assuming without deciding that admitting Neal's opinion regarding A.E.'s credibility was error, we conclude that Appellant's substantial rights were not affected. First, Neal's testimony regarding A.E.'s credibility was brief and was not repeated, and a reasonable juror would assume that the investigating officer believes the victim. *See id*. at 599-600. Second, the trial court instructed the jury as follows: "You are the exclusive judges of the facts proved, of the credibility of the witnesses, and the weight to be give[n] to their testimony[.]" Therefore, the jury knew that it was the judge of the credibility of witnesses. *See id*. Third, the State did not mention the complained-of portions of Neal's testimony during its closing argument. *See id*. Fourth, the jury heard evidence that Appellant forced his way into A.E.'s home and sexually assaulted her, A.E. stabbed Appellant, Martinez saw Appellant leave A.E.'s residence, and Appellant was bleeding when officers found him inside his residence. The jury also heard evidence that Appellant forced A.E. to shower and to clean Appellant's body. In addition, the jury heard forensic scientists testify that semen was found in samples from A.E.'s body, and Appellant's DNA was found in samples taken from A.E.'s fingernails and underwear.

After examining the record as a whole, we have fair assurance that the admission of the complained-of testimony did not influence the jury or had but slight effect. *See* TEX. R. APP. P. 44.2(b); *Cook*, 665 S.W.3d at 601; *Solomon*, 49 S.W.3d at 365. We therefore conclude that the admission of Neal's testimony did not affect Appellant's substantial rights and was therefore harmless. *See* TEX. R. APP. P. 44.2(b); *Cook*, 665 S.W.3d at 601; *Solomon*, 49 S.W.3d at 365. Accordingly, we overrule issue five.

In issue six, Appellant contends the trial court by admitting Riddle's testimony regarding what A.E. told her about the assault. Specifically, Appellant argues that Riddle's testimony was inadmissible hearsay because A.E.'s statements to Riddle were not for the purpose of medical diagnosis or treatment.

**Standard of Review and Applicable Law**

As discussed in detail above in our analysis of issue five, we review the trial court's admission of evidence for abuse of discretion, and we will not disturb its ruling if it is within the zone of reasonable disagreement. *Henley*, 493 S.W.3d at 82-83; *Manuel*, 357 S.W.3d at 74. A trial court's erroneous admission of evidence is generally nonconstitutional error, and we must disregard any nonconstitutional error that does not affect an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Potier*, 68 S.W.3d at 663; *Stovall*, 140 S.W.3d at 718.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay evidence is not admissible except as provided by statute, the Texas Rules of Evidence, or other rules prescribed pursuant to statutory authority. TEX. R. EVID. 802. "Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character." *Taylor*, 268 S.W.3d at 578-79. A statement that is (1) made for, and is reasonably pertinent to, medical diagnosis or treatment, and (2) describes medical history, symptoms or sensations, their inception, or their general cause is not hearsay. TEX. R. EVID. 803(4). "[U]nlike statements made to non-medical professionals, which require affirmative evidence in the record on the issue of veracity, courts can infer from the record that the victim knew it was important to tell a SANE the truth . . . to obtain medical treatment or diagnosis." *Franklin v. State*, 459 S.W.3d 670, 677 (Tex. App.—Texarkana 2015, pet. ref'd).

**Analysis**

As discussed in detail above, Riddle testified regarding her examination of A.E. and what A.E. told her about the assault. Riddle testified that she is certified by the State and through the International Association of Forensic Nurses as a SANE, and she explained that as a SANE, she performs "a head-to-toe assessment" of patients, as well as a genital assessment, and she gathers

evidence to be presented in court. We conclude that A.E.'s statements to Riddle were not hearsay because they fall within the purview of Rule 803(4). *See* TEX. R. EVID. 803(4); **Franklin**, 459 S.W.3d at 677. Moreover, even if Riddle's testimony were hearsay, viewing the entire record, we have fair assurance that the complained-of testimony from Riddle either did not influence the jury or had but slight effect. *See* TEX. R. APP. P. 44.2(b); **Cook**, 665 S.W.3d at 601; **Solomon**, 49 S.W.3d at 365. We conclude that the admission of Riddle's testimony did not affect Appellant's substantial rights and any error in its admission was therefore harmless. *See* TEX. R. APP. P. 44.2(b); **Cook**, 665 S.W.3d at 601; **Solomon**, 49 S.W.3d at 365. For all these reasons, we overrule issue six.

## DISPOSITION

Having overruled each of Appellant's issues, we ***affirm*** the trial court's judgments of conviction.

**BRIAN HOYLE**
Justice

Opinion delivered July 21, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 21, 2023**

**NO. 12-22-00053-CR**

**BRANDON DEMARCUS ROBERTS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 123rd District Court
of Shelby County, Texas (Tr.Ct.No. 21-CR-21898)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below be in all things **affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 21, 2023**

**NO. 12-22-00054-CR**

**BRANDON DEMARCUS ROBERTS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 123rd District Court
of Shelby County, Texas (Tr.Ct.No. 21-CR-21878)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below be in all things **affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 21, 2023**

**NO. 12-22-00055-CR**

**BRANDON DEMARCUS ROBERTS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 123rd District Court
of Shelby County, Texas (Tr.Ct.No. 2021-CR-21899)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the judgment of the court below should be affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below be in all things **affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*